John E. Smith

Nick K. Brooke

Smith & Stephens, PC
315 West Pine Street
Missoula, Montana 59802
Phone: (406) 721-0300
john@smithstephens.com
nick@smithstephens.com

    *Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| Kevin Washington an individual and minority owner of CryptoWatt Investment Partners, LLC, the sole member of CryptoWatt Mining, LLC<br><br>    Plaintiff,<br><br>v.<br><br><br><br>Matthew Brent Goettsche, an individual and majority owner of CryptoWatt Investment Partners, LLC the sole member of CryptoWatt Mining, LLC<br><br>    Defendant | **Cause No. CV-20-2-BU-BMM-KLD**<br><br><br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR APPOINTMENT OF RECEIVER** |

This matter came before the Court on January 10, 2020 upon Plaintiff's

Emergency Motion to Appoint a Receiver ("Motion to Appoint Receiver") over

CryptoWatt Investment Partners, LLC ("CWIP"), the sole member of

CryptoWatt Mining, LLC (hereinafter collectively "CryptoWatt"). Just prior to

the January 10 hearing, Defendant presented its Motion to Compel Arbitration

(Dkt. 8) and asserted its right to have the Motion to Appoint Receiver resolved in

arbitration, pursuant to the clear and unambiguous arbitration provision in the

CryptoWatt Operating Agreement. (Dkt. 9)

Defendant further requested, in the event the Court were to decide the

pending Motion to Appoint Receiver, notwithstanding the arbitration provision

in the Operating Agreement, the opportunity to present the Court with a revised

proposed order to govern the mandate of any receiver that might be imposed.

Accordingly, without waiving and while expressly reserving all rights to compel

and proceed with this action in arbitration, Defendant respectfully submits a

revised order, attached hereto as exhibits A and B. The Defendant asks the Court

to consider its proposed order against the backdrop of the factual narrative below

and the federal legal standard that, "appointing a receiver is an extraordinary

equitable remedy, which should be applied with caution" *Canada Life Assur. Co.*

*v Lapeter*, 563 F.3d 837, 844 (9th Cir. 2009) (quoting *Aviation Supply Corp. v.*

*R.S.B.I. Aerospace, Inc.* 999 F2d 314,316 (8th Cir. 199) Defendant's exhibit A

shows a markup to the proposed receiver order originally proposed by the

Plaintiff in this case. Exhibit B is a clean copy, accepting all tracked changes in

Exhibit A.

By way of background, and to assist the Court in resolving the issue, Defendant respectfully submits the following information:

Plaintiff and Defendant are partners in CryptoWatt pursuant to the terms of a detailed Limited Liability Company Operating Agreement of CryptoWatt Investment Partners, LLC dated October 1, 2018. This original Operating Agreement is attached hereto as exhibit C. The original Operating Agreement was updated August 24, 2019 by Amendment No. 1, which included an amendment to Schedule A of the original Operating Agreement (collectively hereinafter "Operating Agreement"). Amendment No. 1 and amended Schedule A are attached hereto as exhibit D.

As described in more detail below, CryptoWatt—and the several jobs and other economic benefits it has created for the city of Butte, MT—is a business that *Defendant* repeatedly rescued from catastrophe due to failures by Plaintiff and his former business partner, Daniel Burrell. Further, the terms of the Operating Agreement are the result of extensive transactions and negotiations through which Plaintiff has agreed to an increasingly small and passive role in the business.  As such, any receiver ordered by this Court should not be used to make an end-run around the agreements of these sophisticated private parties.

Prior to the partnership reflected in the Operating Agreement, Defendant was originally a customer of Plaintiff and his former business partner, Burrell. In the winter of 2018, Plaintiff and Burrell agreed to host a substantial amount of mining equipment on Defendant's behalf in exchange for a hosting fee. However, Plaintiff and Burrell failed to deliver the hosting service as promised to Defendant, as they were unable to deliver the electricity in accordance with the hosting agreement. This default almost put CryptoWatt out of business because Plaintiff and his partner could not afford to pay the default penalties under the hosting agreement.

In May 2018, instead of taking this dispute into litigation, and in an effort to keep CryptoWatt and the mining equipment operational, Defendant agreed to provide a substantial bailout package to Plaintiff and Burrell, in exchange for an ownership position in CryptoWatt.

Within two months of this bailout, Defendant discovered that Plaintiff and Burrell were in breach of numerous representations and covenants—including the blatantly unauthorized and fraudulent withdrawal of more than $10,000,000 from the business. Making matters worse, based largely on information provided by FX Solutions to Defendant, CryptoWatt's operations were revealed to be on the brink of disaster, including the possible loss of key vendors and employees due to non-payment.

Accordantly, in late July 2018, Defendant once again stepped in, paid all vendors and employees to save the facility and numerous jobs, and gave Plaintiff and Burrell two choices: either they agree to a revised ownership structure and operating agreement of CryptoWatt, or Defendant would be forced to initiate litigation regarding their numerous misdeeds.  Plaintiff quickly took Defendant's side, blamed Burrell, and, in August 2018, Burrell was removed as CryptoWatt's Chief Executive Officer.

On October 1, 2018, Plaintiff, Defendant and Burrell agreed to the terms of the Operating Agreement, pursuant to which, among other things, Defendant was recognized as the majority owner and sole manager of CryptoWatt. Two months later, in December 2018, Plaintiff bought out Burrell from CryptoWatt, leaving Plaintiff as the sole minority partner.

One year later, in October 2019, Plaintiff once again approached Defendant seeking financial support.  Plaintiff offered to exchange his interest in CryptoWatt's operating income (i.e., cryptocurrency mining revenue) for a one-time payment of $2,000,000 from Defendant.  Defendant accommodated this request, and the parties entered into Amendment No. 1 to the Operating Agreement.

As a result of the Amendment, Plaintiff's sole remaining economic interest in CryptoWatt is in the eventual sale of the real property and/or the buildings of

CryptoWatt—from which Plaintiff will have a 27.1% interest in any such sale proceeds. To be clear, Plaintiff has no management rights to cause any such sale to occur and has therefore willingly accepted (in exchange for compensation) a completely passive ownership position in CryptoWatt with only a contingent economic interest in an eventual liquidity event, if any, which liquidity event may only be approved by Defendant in his sole discretion.

In December 2019, as a result of Defendant's arrest, he became temporarily incapacitated from managing CryptoWatt. Because it is unclear when the Defendant will be able to return to his management responsibilities, any Receiver that the Court might impose should be given only a narrowly tailored mandate to keep CryptoWatt operating in the ordinary course, and only until such time as Defendant is able to resume his contractual functions.

The Plaintiff's proposed receivership order would, if approved by this Court, create a delegation of authority well above and beyond what is needed to serve the foregoing purpose and would likely result in a constructive taking of Defendant's private property without just compensation. To that end, Defendant's submitted revised receivership order, if approved by this Court, would eliminate any authorization of the Receiver to take action beyond what is necessary to keep CryptoWatt operating in the ordinary course pursuant to the parties' private agreements.

In particular, Defendant wants to ensure that CryptoWatt (1) preserves its power contract with Northwest Energy (for which a payment is due during the month of January), (2) continues to operate its cryptocurrency mining equipment in a manner that maximizes CryptoWatt's revenue;  (3) collects any other operating or non-operating revenue that may be available to CryptoWatt from time to time, such as the $500,000 tax credit currently due and payable to CryptoWatt from the Montana Department of Revenue, (4) obtains supplemental debt and/or equity capital if such capital is necessary to fund CryptoWatt's operating budget and, in any case, only upon arm's length terms and conditions that are in the best interest of CryptoWatt's members; (4) pays its employees and contractors any wages and/or other fees to which they are and/or become legally entitled to receive and (5) preserves any operating profits that may accrue in one or more accounts for the sole benefit of the Defendant and/or his designees in accordance with the terms of the Operating Agreement.

The Defendant respectfully submits that, under no circumstances should the Receiver be permitted to take any action that would effectively undermine the terms of a privately negotiated partnership between two sophisticated parties.  As described above, Plaintiff no longer has any economic interest in any operating income generated by CryptoWatt, nor can Plaintiff take any action to cause CryptoWatt to sell any of its assets or distribute any resulting proceeds to Plaintiff

without the express approval of the Defendant. To the extent that Plaintiff has any

indirect interest in ensuring that CryptoWatt continues to operate in the ordinary

course, any such interest is more than adequately protected by Defendant's more

narrowly crafted receivership order submitted herewith. Defendant's interests are

aligned with Plaintiff's in preserving the marketability of CryptoWatt, but

Defendant also has a legitimate interest in generating as much operating profit

from CryptoWatt's mining activities as possible.

Therefore, Defendant believes that Defendant's submitted revisions to

Plaintiff's proposed receivership order would be more narrowly tailored to the

purpose of this receivership and the best interests of all of CryptoWatt's

stakeholders in accordance with the terms of the existing Operating Agreement.

RESPECTFULLY SUBMITTED this 12th day of January 2020.

SMITH & STEPHENS, P.C.

by: */s/John E. Smith*
**John E. Smith**
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of January 2020, a copy of the

foregoing document was served on the following persons by the following means:

1, 2    CM-ECF
_____ Hand Delivery
_____ Mail
_____ Overnight Delivery Service
_____ Fax
_____ E-Mail

1.      CLERK, UNITED STATES DISTRICT COURT

2.      Kris McLean, Counsel for Plaintiff Washington

By:    */s/ John E. Smith*
John E. Smith
SMITH & STEPHENS, P.C.
Attorney for Defendant