| | |
|---|---|
| Robert L. Sterup<br>BROWN LAW FIRM, P.C.<br>315 North 24th Street<br>P.O. Drawer 849<br>Billings, MT 59103-0849<br>Tel. (406) 248-2611<br>Fax (406) 248-3128<br>rsterup@brownfirm.com | JOHN E. SMITH<br>NICK K. BROOKE<br>SMITH & STEPHENS, P.C.<br>315 West Pine Street<br>Missoula, Montana 59802<br>Phone: (406) 721-0300<br>Fax: (406) 721-5370<br>john@smithstephens.com<br>nick@smithstephens.com |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| KEVIN WASHINGTON,<br><br>    Plaintiff,<br>vs.<br><br>MATTHEW BRENT GOETTSCHE,<br><br>    Defendant. | Cause No. CV-20-2-BU-BMM-KLD<br><br>**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY PROCEEDINGS** |
| FX SOLUTIONS, INC.<br><br>    Plaintiff,<br>vs.<br>MATTHEW BRENT GOETTSCHE,<br><br>    Defendant. | Cause No. CV-20-03-BU-BMM-KLD |

Defendant Matthew Goettsche ("Goettsche") respectfully submits this Reply Memorandum of Law in Support of Motion to Stay these consolidated proceedings

Page 1 of 17

and to compel arbitration.[1] All claims of Plaintiff Kevin Washington ("Washington") are subject to binding arbitration and this litigation must be stayed pending the arbitration. Claims of both Washington and FX Solutions, Inc. are subject to stay pending criminal proceedings against Defendant.

## I. Introduction

Washington's claims must be stayed both because they are subject to mandatory arbitration and because the *Keating* standards weigh in favor of staying the action while Goettsche's criminal action proceeds. Goettsche moved to compel arbitration of Washington's claims. Washington has not mounted any meaningful challenge to the enforceability of the arbitration agreement, and the receivership is not inconsistent with compelled arbitration.

Furthermore, pursuant to the *Keating* factors, both FX Solutions and Washington's claims should be stayed pending Goettsche's criminal case in the District of New Jersey.

---

[1] At the hearing on Washington's Motion to Appoint a Receiver, Washington requested leave to file a supplemental opposition to Goettsche's Motion to Compel Arbitration. However, Washington never filed such a submission, and therefore Goettsche's deadline to file a reply was not triggered. Goettsche respectfully requests that the Court deem this submission as a reply in further support of both Goettsche's Motion to Stay these proceedings and his related Motion to Compel Arbitration.

## II. DISCUSSION

### A. Stay of Arbitrable Claims

### 1. Claims Subject to Arbitration

Goettsche has moved to compel arbitration pursuant to Sections 3-4 of the Federal Arbitration Act ("FAA"). 9 U.S.C. § 3-4. Goettsche and Plaintiff Washington executed a written Limited Liability Company Operating Agreement ("Operating Agreement") that includes an unambiguous arbitration clause.

> Any unresolved controversy or claim arising out of or relating to this Agreement, except as (i) otherwise provided in this Agreement, or (ii) any such controversies or claims arising out of either party's intellectual property rights for which a provisional remedy or equitable relief is sought, shall be submitted to arbitration by one arbitrator mutually agreed upon by the parties...

See Ex. A (Operating Agreement) § 11.02 to Defendant's Brief in Support of Motion to Compel Arbitration (ECF #9-1).

Washington's claims indisputably "arise out of or relate to" the Operating Agreement. Plaintiff does not contend to the contrary. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Elk Mountain Motor Sports v. Arctic Cat Sales, Inc.,* 2013 WL 5492960, at *3 (D. Mont. 2013) quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24–25 (1983).

### 2. Receivership and Arbitration

In his Brief opposing the Motion to Compel Arbitration, Plaintiff contended the Court had authority to appoint a Receiver even if the disputes of the Parties are subject to arbitration. The argument is nonresponsive. Even if a Receiver were appropriate to preserve the status quo under the FAA, that would not be a basis to deny arbitration. *PMS Distrib. Co. v. Huber & Suhner, A.G.*, 863 F.2d 639, 641-42 (9th Cir.1988)(the Court may issue an injunction in aid of arbitration to maintain the status quo pending arbitration.)[2]

### 3. Burden Opposing Arbitration

"Because arbitration is favored, … the party challenging the enforceability of the arbitration agreement, 'bear(s) the burden of proving that the provision is unenforceable.'" *Opie v. CVS Health Corporation*, 2017 WL 9324521 (D. Mont. 2017) *quoting Mortensen v. Bresnan Communications, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013). Washington has failed to carry this burden. In his opposition, Washington did not articulate any bases for avoiding the Operating Agreement, much less the arbitration provision within the agreement. Even if Washington's complaint made a general claim of fraud in the inducement – it does not – that still would be insufficient. "[A] party's challenge to another provision of the contract,

---

[2] Changed circumstances may make the receivership unnecessary, an issue to be addressed in further submissions.

or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71, 130 S.Ct. 2772 (2010). "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445, 126 S.Ct. 1204 (2006). Because Washington does not "challenge[] the (arbitration clause) specifically," the Court "must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center*, 564 U.S. at 74.

The FAA provides that the court "*shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement," if the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4  (emphasis supplied). *Opie v. CVS Health Corporation*, 2017 WL 9324521 (D. Mont. 2017). Since there is no issue as to the existence and validity of the arbitration agreement, the Court should issue an Order compelling arbitration of Washington's claims against Goettsche and for stay of this litigation.

### 4. Stay Pending Arbitration

Under the FAA a stay of litigation is mandatory where the disputes are referable to arbitration. "[T]he court … upon being satisfied that the issue involved

in such suit or proceeding is referable to arbitration …, *shall* on application of one of the parties *stay* the trial of *the action until such arbitration has been ha*d in accordance with the terms of the agreement." 9 U.S.C. §3 (emphasis supplied). "[C]ourts are 'limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.' *If these two requirements are met*, judicial proceedings <u>must</u> *be stayed* 'until such arbitration has been had in accordance with the terms of the agreement ....'" *Opie*, 2017 WL 9324521 *5 (emphasis supplied) (*quoting Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); 9 U.S.C. § 3).

Because Washington's claims are subject to binding arbitration, this Court "must" stay litigation of those claims.

### B. Stay Pursuant to Keating

In addition to a stay pending arbitration, a stay of both civil cases is warranted under the standards of *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995). Goettsche has met his burden in showing that 1) his Fifth Amendment rights are significantly implicated in these civil cases, which factually overlap with the criminal case, 2) the Plaintiff's interest in proceeding expeditiously is outweighed by Goettsche's Fifth Amendment rights, 3) litigating this proceeding would place a heavy burden on the Defendant, 4) it would be more convenient and efficient for this Court to stay these proceedings, and 5) the

interests of third parties and the public do not weigh against a stay. *See Keating*, 45 F.3d at 324.

### 1. Fifth Amendment Rights Implicated

Goettsche's Fifth Amendment rights are directly and significantly implicated in these proceedings because both cases rely upon facts that will also be at issue in his criminal case. Washington's opposition fails to adequately consider the heavy burden litigating these cases would place on Goettsche's Fifth Amendment rights and misrepresents Goettsche's involvement in the proceedings before this court.

First, forcing Goettsche to litigate these proceedings – which explicitly rely on facts directly at issue in the criminal case – would seriously burden Goettsche's Fifth Amendment rights. *See Blanton, et al. v. Black, et al.*, 05-CV-08 (D. Mont. Nov. 23, 2005), ECF#28 at 5 ("The issues of both proceedings are substantially similar and Defendants risk incriminating themselves by proceeding with the civil action during the criminal investigation."). "Some courts have gone so far as to recognize the extent of the overlap" between the civil and criminal matters as the "most important factor." *See eBay, Inc. v. Digital Point Sols., Inc.*, 2010 WL 702463, at *3 (N.D. Cal. 2010); *see also Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 527 (D.N.J. 1998) (staying discovery and noting "The similarity of issues has been termed 'the most important issue at the threshold' in determining whether or not to grant a stay.").

Washington's Complaint explicitly relies on the allegations in the Indictment, which was attached to the Complaint. The FX Solutions Complaint does the same. There would be no way for Goettsche to answer both Complaints without simultaneously making representations that would be at issue in his criminal case. Nor would Goettsche be able to defend himself against a potential motion for summary judgment without implicating his Fifth Amendment rights. *See Blanton*, ECF#28 at 5 ("Further, the claim of privilege will not prevent summary judgment in the civil case if the litigant does not present sufficient evidence to satisfy the usual burdens in the litigation."); *see also Walsh Sec.*, 7 F. Supp. 2d at 528 (noting that without a stay, defendants "must choose between waiving their Fifth Amendment rights and defending themselves in the civil lawsuit or asserting the privilege and probably losing the civil case").

Second, the fact that Goettsche has already been indicted based on allegations that are factually related to these proceedings weighs heavily in favor of a stay. "[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*, 2009 WL 2136986, at *2 (E.D. Cal. 2009) internal citations omitted; *eBay, Inc.*, 2010 WL 702463, at *3 (status of the criminal proceeding is "crucial" in deciding whether to

stay civil case). In fact, many of the cases cited in Washington's opposition can be distinguished because they rule on motions to stay civil cases where there was a pending criminal *investigation* rather than an *indicted* criminal case. *See, e.g.*, ECF#40 at 9-13 (citing *Gen. Elec. Co. v. Liang*, 2014 WL 1089264, at *4 (C.D. Cal. 2014) (denying motion to stay based on criminal investigation: "However, the basis for staying the civil action here is significantly diminished by the fact that Liang has not been charged with any crime."); *Applied Materials, Inc. v. Semiconductor Spares,* Inc., 1995 WL 261451, at *2 (N.D. Cal.1995) (finding the defendant's Fifth Amendment privilege to be "far weaker" than if he had already been indicted)).  The Ninth Circuit explicitly makes this distinction. *See Gen. Elec.*, 2014 WL 1089264, at *3 ("As the Ninth Circuit has explained, '[t]he case for staying civil proceedings is 'a far weaker one' when '[n]o indictment has been returned ...'" (*quoting Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 903 (9th Cir.1989)).

Washington contends Goettsche has been inconsistent in asserting his Fifth Amendment rights by "actively litigating" this action. Not so. In every substantive document or brief submitted to this Court, Goettsche has explicitly asserted his rights to compel arbitration and stay these cases. *See, e.g.*, ECF#9, 13 at 2, 37, 42 at 2, 49 at 1 n.1.  Goettsche has not sought to litigate anything other than the two Motions at issue in this document – his Motion to Compel Arbitration and his

Page 9 of 17

Motion to Stay these cases. These Motions are clear efforts to not litigate these cases in this forum.

Washington also claims that Goettsche made factual "representations to this Court," in Goettsche's Motion to Compel Arbitration. *See* ECF#40 at 8.[3] Washington says that Goettsche "disclosed" the CryptoWatt Operating Agreement and "made affirmative statements about Defendant's ownership of CryptoWatt." *Id.* In fact, CryptoWatt's Operating Agreement was incorporated into Washington's Complaint by reference. *See* ECF#1-1 ¶ 7. And, the only "affirmative statements" Goettsche included in his motion to compel arbitration were based on the Operating Agreement. *See* ECF#9.

Because Goettsche's Fifth Amendment rights are implicated in these civil cases and there is significant overlap with the facts alleged in the criminal case, the first *Keating* factor weighs in favor of a stay. *See Taylor*, 2009 WL 2136986, at *2 (staying civil case for six months because it "may substantially implicate defendants' Fifth Amendment rights against self-incrimination, create unnecessary complexities with respect to discovery, expose defendants' strategy or theories with

---

[3] Washington also points to Goettsche's response to Washington's Emergency Motion to Appoint a Receiver, "a detailed – 4-page – account of Defendant's business dealings and transactions with Plaintiff." ECF#40 at 8. Goettsche had no choice but to correct the record in response to Washington's Motion, and this is not an example of Goettsche affirmatively litigating this action when the next day Goettsche moved to compel arbitration.

respect to the criminal case, or otherwise prejudice the pending criminal proceedings.").

### 2. Prejudice to Goettsche

The second and third *Keating* factors also weigh in favor of a stay. Goettsche is highly prejudiced by the limitations on his ability to litigate these cases. Conversely, Washington will not be unduly prejudiced by a stay of this action. CryptoWatt is currently being managed and operated by the Receiver, and Goettsche, through counsel, has facilitated the process of protecting CryptoWatt's future.[4] Washington's minority investment in the facility is tied to the operation of CryptoWatt, which is ongoing, and not the outcome of these cases. Nor is there concern here that Washington will unable "to identify other potential defendants," or that "witnesses' memories will fade, and evidence will become stale." *See* ECF#40 at 9,13 (citing *Gen. Elec. Co.*, 2014 WL 1089264, at *4 (noting discovery should continue because unindicted defendant may have disclosed trade secrets and plaintiff might seek injunction or add defendant); *Pagtalunan v. Galaza,* 291 F.3d 639, 643 (9th Cir. 2002) (upholding dismissal of habeas petition and not deciding motion to stay)). Washington will be able to seek full relief once the criminal case is over.

---

[4] Goettsche respectfully refers the Court to his sealed Opposition to Plaintiff's Motion to Allow Receiver to Sell Assets (ECF#49), where he explains these confidential facts in more detail.

Washington also points to the docket in Goettsche's criminal case to note that it is "complex" and "discovery is likely immense," and to conclude that the criminal matter will not be resolved for some time. *See* ECF#40 at 10-11. However, the criminal docket also makes it clear that Goettsche has repeatedly asserted his Speedy Trial rights. The Speedy Trial Act's requirements reduce the possibility of a long delay. *See Am. Motorists Ins. Co. v. Bridger Pub. Sch. Dist. #2,* 2007 WL 1227592, at *2 (D. Mont. 2007) (noting "the potential harm to civil litigants arising from delaying the case is reduced due to the promise of a fairly quick resolution of the criminal case under the Speedy Trial Act"). Delay is also less of a concern when the related criminal proceeding has been indicted. *See eBay*, 2010 WL 702463 *3.

Accordingly, because "it is highly likely and probable that [Goettsche] will suffer clear hardship and/or inequity as a result of simultaneously conducting both civil and criminal proceedings," and the prejudice to Goettsche in litigating far outweighs the prejudice to Washington and FX Solutions in staying the case, these case should be stayed. *See Blanton v. Black,* ECF#28 at 8.

### 3. Remaining *Keating* Factors

As explained in Goettsche's moving Brief, the remaining factors – the convenience of the Court, the efficient use of judicial resources, and the interests of third parties and the public in both actions – also weigh in favor of a stay.

Washington contends the Court will be inconvenienced and these cases will not be resolved efficiently if they are stayed pending the criminal case. *See* ECF#40 at 13-15. He also asserts that Goettsche is represented by competent counsel who can litigate these cases while he is detained. *Id.* at 14. This misses the point. Goettsche's counsel cannot litigate the case without access to their client or the information necessary to respond to Washington's and FX Solution's allegations. So long as Goettsche remains detained in another district, particularly under the current COVID-19 restrictions, it will be less efficient to continue these litigations and the Court will be more inconvenienced by trying to do so while also resolving privilege issues.

On the other hand, if the Court stays these cases now, before discovery has begun, it will conserve judicial resources and avoid delays caused by Goettsche's inability to access information. *See McMullen v. Bay Shrimp Management,* 335 F.3d 215, 219 (3d Cir. 2003) ("As the Supreme Court has reminded us, 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.'" (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964))); *see also Blanton,* ECF#28 at 6 ("This Court has an interest in resolving cases efficiently. However, without a stay… discovery would likely cause inefficiency because the [defendants] would be forced to assert Fifth Amendment privileges."); *Taylor*, 2009 WL 2136986, at *4 ("Staying the

case makes efficient use of judicial resources by 'insuring that common issues of fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination.'").

No third-party interests weigh against a stay. Washington points to the employees of FX Solutions who "manage and maintain the CryptoWatt facility" and the citizens of Butte. *See* ECF#40 at 15. As both Plaintiffs are well aware, however, the CryptoWatt facility is currently open and operating under the oversight of the Receiver. Contrary to the supposedly dire picture presented by Washington, no jobs "hang in the balance of these civil proceedings," *see id.* at 16, because the facility will continue to operate while these cases are stayed.

Because "[n]either the criminal action nor this action appear to carry any greater public interest than other matters pending in this Court," the public's interest in these cases does not weigh against a stay. *See CQI, Inc. v. Mountain W. Farm Bureau Ins. Co.,* 2011 WL 13196191, at *2 (D. Mont. 2011). To the extent that the citizens of Butte, Montana, are interested in CryptoWatt's "generation of jobs and tax revenue," those interests will not be impeded by staying this litigation while the facility continues to run. *See id.*

Accordingly, Goettsche has met his burden to show that the *Keating* factors weigh in favor of a stay.

**CONCLUSION**

For all the foregoing reasons this Court should stay these proceedings.

RESPECTFULLY SUBMITTED this 23rd day of April, 2020.

By: /s/ Robert L. Sterup
Robert L. Sterup
BROWN LAW FIRM, P.C.

## CERTIFICATE OF COMPLIANCE

The undersigned, Robert L. Sterup, certifies that Defendant's Reply Memorandum of Law in Support of Motion to Stay Proceedings complies with the requirements of Rule 7.1(d)(2). The lines in this document are double spaced, except for footnotes and quoted and indented material, and the document is proportionately spaced with Times New Roman Font typeface consisting of fourteen characters per inch. The total word count is 3,028 words, excluding caption and certificates of compliance and service. The undersigned relies on the word count of the word processing system used to prepare this document.

DATED this 23rd day of April, 2020.

/s/ Robert L. Sterup_
Robert L. Sterup

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of April, 2020, a copy of the foregoing document was served on the following persons by the following means:

<u>1, 2, 3</u>CM-ECF
_____ Hand Delivery
_____ Mail
_____ Overnight Delivery Service
_____ Fax

1. CLERK, UNITED STATES DISTRICT COURT

2. Kris McLean

3. Tyson McLean


By: _/s/ Robert Sterup_
Robert Sterup