| | |
|---|---|
| Robert L. Sterup<br>BROWN LAW FIRM, P.C.<br>315 North 24th Street<br>P.O. Drawer 849<br>Billings, MT 59103-0849<br>Tel. (406) 248-2611<br>Fax (406) 248-3128<br>rsterup@brownfirm.com | JOHN E. SMITH<br>NICK K. BROOKE<br>SMITH & STEPHENS, P.C.<br>315 West Pine Street<br>Missoula, Montana 59802<br>Phone: (406) 721-0300<br>Fax: (406) 721-5370<br>john@smithstephens.com<br>nick@smithstephens.com |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| KEVIN WASHINGTON,<br><br>　　　　　Plaintiff,<br>　vs.<br><br>MATTHEW BRENT GOETTSCHE,<br><br>　　　　　Defendant. | Cause No. CV-20-2-BU-BMM-KLD<br><br>**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |
| FX SOLUTIONS, INC.<br><br>　　　　　Plaintiff,<br>　vs.<br>MATTHEW BRENT GOETTSCHE,<br><br>　　　　　Defendant. | Cause No. CV-20-03-BU-BMM-KLD |

Defendant Matthew Goettsche ("Goettsche") respectfully submits this Reply

Memorandum of Law in Support of his Motion to Compel Arbitration and for stay

Page 1 of 12

of litigation. All claims of Plaintiff Kevin Washington ("Washington") are subject to binding arbitration. This litigation must be stayed pending the arbitration.

### A. Motion to Compel Arbitration

### 1. Governing Law.

The Federal Arbitration Act ("FAA") applies to any contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Because the Cryptowatt Operating Agreement involves commerce, the FAA governs here, as Washington concedes.

For "'any arbitration agreement within the coverage of the [FAA],'" an "'arbitrability determination is made by applying the federal substantive law of arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) *quoting Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346 (1985). Here, the existence of the arbitration clause, Operating Agreement §11, is not at issue. [1] Washington's challenge to the scope of arbitration is governed by the federal substantive law of arbitrability. The Delaware governing law clause of the Operating Agreement is inapplicable to arbitrability.

### 2. Determination of Arbitrability Of Disputes

"In deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the

---

[1] "Challenges to the very existence of the contract are, in general, properly directed to the court." *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017).

parties; and (2) whether the agreement covers the dispute." *Brennan*, at 1130 *citing Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S.Ct. 58 (2002).

Under Federal law of arbitrability, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether … their agreement covers a particular controversy." *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 68–69, 130 S.Ct. 2772 (2010). Whether the arbitration agreement covers a specific dispute can be "delegated to the arbitrator where 'the parties clearly and unmistakably" so agree. *Brennan*, at 1130 *quoting AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415 (1986). In the Ninth Circuit, delegation to the Arbitrator occurs when American Arbitration Association (AAA) rules are incorporated in the arbitration clause. As the Ninth Circuit has made clear, "incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Brennan*, at 1130 *quoting Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074-1075 (9th Cir.2013). [2] This is so because the AAA's commercial arbitration rules provide that the "arbitrator shall have the power to rule on his or her own

---

[2] Both *Brennan* and *Oracle* left open the question whether the same rule would apply when fewer than all the parties to an arbitration agreement were sophisticated. *Id.; Oracle*, 724 F.3d at 1075 n.2. Here there can be no dispute that both Goettsche and Washington are sophisticated parties.

Page 3 of 12

jurisdiction, including any objections with respect to the ... validity of the arbitration agreement." *Brennan*, at 1130; AAA Commercial Arbitration Rule 7–6(a).

> The Cryptowatt Operating Agreement provides:
>
>> The arbitration shall take place in Denver, Colorado, USA, **in accordance with the AAA rules then in effect**, and judgment upon any award rendered in such arbitration will be binding and may be entered in any court having jurisdiction thereof.

Exh. A, Operating Agreement §11.02 (emphasis supplied). This incorporation of AAA rules confers on the Arbitrator the authority to determine arbitrability. *See, e.g., Caviani v. Mentor Graphics Corporation*, 2019 WL 4470820 *4 (N.D. Cal. 2019)(the "Agreement clearly and unmistakably delegates the power to determine arbitrability of a claim to the arbitrator" where it "incorporated by reference the rules and procedures of JAMS"); *Schmidt v. Samsung Electronics Am., Inc.*, 2017 WL 2289035 *6 (W.D. Wash. 2017) (incorporation of AAA rules was "'clear and unmistakable' evidence of intent to delegate the arbitrability question to an arbitrator").

In sum, because Cryptowatt Operating Agreement's arbitration clause incorporates "the AAA rules then in effect," whether the arbitration agreement covers the subject disputes has been "delegated to the arbitrator." The Court

should compel arbitration. Washington can direct to the Arbitrator his contentions regarding the scope of the arbitration clause.

### 3. Exceptions to Arbitration

Citing sections of the Operating Agreement of no pertinence to the actual claims raised by his Complaint, Washington contends "exceptions to arbitration" defeat compelled arbitration. Brief p. 7. This contention easily is dismissed.

**a.     Interim Remedy – Receiver Appointment – Section 12.10**. Interim equitable remedy in the form of appointment of a Receiver is consistent with compelled arbitration. "A plaintiff seeking arbitration may request that a court issue an injunction in aid of arbitration to maintain the status quo pending arbitration." *Shainin II, LLC v. Allen,* 2006 WL 247349 (W.D. Wash. 2006) *citing PMS Distrib. Co. v. Huber & Suhner, A.G.*, 863 F.2d 639, 641-42 (9th Cir.1988).[3]

Section 12.10 of the Operating Agreement is consistent with this principle. Under the heading "<u>Equitable Remedies</u>," §12.10 provides that "each party hereto shall be entitled to an injunction or injunctions to prevent breaches of this Agreement by any other party and to enforce specifically the terms and provisions hereof in any federal or state court to which the parties have agreed…." Exh. A §12.10. Equitable remedies in the form of injunction or specific performance are

---

[3]     Conversely, "if th[e] case is subject to arbitration, mandatory injunctive relief is not available." *Bernardino v. Barnes & Noble Booksellers, Inc.,* 2017 WL 3727230 (S.D.N.Y. 2017).

well-recognized forms of judicial relief available to the parties in cases where arbitration of substantive disputes is compelled. *Philadelphia Indemnity Insurance Company v. Ohana Control Systems, Inc.*, 2020 WL 1536637 *5 (D. Haw. 2020)(specific performance is an equitable remedy). In *Oracle* the Ninth Circuit expressly rejected contentions that contract terms reserving certain claims to the Court defeated compelled arbitration, concluding it knew of "no authority supporting this position." *Oracle*, 724 F. 3d at 1076. A specific performance "carve-out" cannot defeat arbitrability, given that compelled arbitration *is* a form of "specific performance." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1125 (9th Cir. 2008) (motion to compel arbitration "is in essence a suit in equity to compel specific performance of [that contract].") In *Oracle* the arbitration clause provided that "any claim arising out of the (contract) shall be settled by arbitration," but a "carve-out clause state[d] 'that either party may bring any action, in a court of competent jurisdiction (which jurisdiction shall be exclusive), with respect to any dispute relating to such party's Intellectual Property Rights or with respect to [Myriad's] compliance with the TCK license." *Oracle*, at 1074. The Ninth Circuit held that notwithstanding this "carve-out clause," because AAA rules were incorporated in the arbitration clause, the Arbitrator had authority to determine arbitrability, as discussed above.

In sum, under §12.05 and the federal law of arbitrability, while either party may seek preliminary injunctive relief or specific performance from the Court, this does not defeat compelled arbitration of their substantive disputes.  Washington's Complaint does not seek specific performance.  Washington's Motion for Appointment of a Receiver has already been adjudicated, and the Receiver may remain in place pending arbitration (subject to further agreement of the Parties or Court Order).  Nothing in §12.05 defeats arbitrability.

      **b.**     **Sect. 5.04 – Member Liability.**  Addressing Member/Officer "Liability for Certain Acts," the Operating Agreement provides:  "No Managing Member or officer shall be liable to the Company or to any Member for any loss or damage sustained by the Company or any Member, unless the loss or damage shall have been the result of such Managing Member's or officer's fraud, deceit, gross negligence or willful misconduct against the Company."  Exh. A §5.04.  The clause does not speak to arbitrability in any fashion.   Instead, "any claim" regarding member liability is subject to the arbitration clause, which broadly extends to "[a]ny unresolved controversy or claim arising out of or relating to this Agreement …."  Exh. A §11.02.

      If Washington intends to argue that the "fraud" reference in §5.04 takes his claims out of arbitration clause, he is mistaken.  "[A] party's (fraud) challenge to another provision of the contract, or to the contract as a whole, does not prevent a

court from enforcing a specific agreement to arbitrate." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71, 130 S.Ct. 2772 (2010).

    c.    **Sect. 5.06 - Indemnity.**  The Operating Agreement indemnifies Members from liability "[i]n the absence of fraud, willful misconduct or gross negligence …."  Exh. A §5.06.  Nothing in Washington's complaint implicates this indemnity clause which, by its terms, obligates *Cryptowatt* to "indemnify and hold harmless" the "employees and agents of (Cryptowatt), (ii) officers and managers of subsidiaries of (Cryptowatt), and (iii) any Person who serves at the request of (Cryptowatt) or the Managing Member on behalf of (Cryptowatt) as a managing member, advisor, officer, employee or agent of" Cryptowatt.  Exh. A §5.06(b).  Because Washington's Complaint does *not* seek indemnify *from Cryptowatt* (or Goettsche), §§5.06 (a), (b) have no pertinence, and the reference to a "Court of competent jurisdiction" in §5.06(b) is simply immaterial here.

    d.    **Section 11.02 – Otherwise Provided.**  Washington appears to suggest "11.02(i)" contains a reference to "Court of competent jurisdiction" and/or "fraud, deceit, gross negligence, or intentional breach of [his] obligations hereunder."  Washington Brief p. 8.  No such terms are found in §11.02, however.  Seizing upon the "except as (i) otherwise provided in this Agreement," language of §11.02, Washington appears to contend contract terms entirely *un*related to his Complaint against Goettsche implicate the "otherwise provided" language.

Whatever persuasiveness this argument might have in another context, it is a patent *non sequitur* in this case. Washington's Complaint alleges breach of fiduciary duty (Count I) and actual or constructive fraud (Count II). No claim is made under §5.06 of the Operating Agreement. The Arbitrator will construe §5.04 and other contract terms in arbitrating these claims. The availability of equitable relief from the Court is consistent with, and does not defeat, arbitrability of Washington's substantive claims.

    e.    **Doubts Resolved In Favor or Arbitration.** Where the arbitration agreement is "capable of two different reasonable interpretations," under "the federal presumption in favor of arbitration," and even if "the arbitration agreement is ambiguous, it should be interpreted as granting arbitration coverage over 'all disputes' arising from" the contract. *Comedy Club, Inc. v. Improv West Associates*, 553 F.3d 1277, 1286 (9th Cir. 2009)  "'[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Id.* at 1284 *quoting AT&T*, 475 U.S. at 650. *see also Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1139 (9th Cir.1991) ("Under the Federal Arbitration Act ... any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ....")(internal quotation marks and citation omitted).

### B. Stay Pending Arbitration

A stay of litigation is mandatory where the disputes are referable to arbitration. "[T]he court … *shall … stay* the trial of *the action until such arbitration has been ha*d …." 9 U.S.C. §3 (emphasis supplied). Where arbitration is compelled "judicial proceedings *must* be stayed 'until such arbitration has been had in accordance with the terms of the agreement ....'" *Opie v. CVS Health Corporation*, 2017 WL 9324521 *5 (D. Mont. 2017) *quoting Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000), 9 U.S.C. § 3. In his response brief Washington does not contend otherwise. Washington's claims must be stayed pending arbitration.

### CONCLUSION

For all the foregoing reasons this Court should stay proceedings pending the conclusion of criminal proceedings. The Court may compel arbitration at that time, or, alternatively, may compel arbitration.

RESPECTFULLY SUBMITTED this 11th day of May 2020.

By: /s/ Robert L. Sterup
Robert L. Sterup
BROWN LAW FIRM, P.C.

## CERTIFICATE OF COMPLIANCE

The undersigned, Robert L. Sterup, certifies that Defendant's Reply Memorandum of Law in Support of Motion to Compel Arbitration and Stay Proceedings complies with the requirements of Rule 7.1(d)(2). The lines in this document are double spaced, except for footnotes and quoted and indented material, and the document is proportionately spaced with Times New Roman Font typeface consisting of fourteen characters per inch. The total word count is 1,948 words, excluding caption and certificates of compliance and service. The undersigned relies on the word count of the word processing system used to prepare this document.

DATED this 11th day of May, 2020.

/s/ Robert L. Sterup_  
Robert L. Sterup

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of May, 2020, a copy of the foregoing document was served on the following persons by the following means:

<u>1, 2, 3</u>CM-ECF
_____Hand Delivery
_____Mail
_____Overnight Delivery Service
_____Fax

1. CLERK, UNITED STATES DISTRICT COURT

2. Kris McLean

3. Tyson McLean


By: <u>  /s/ Robert Sterup</u>
Robert Sterup