19STCV39029

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Steven Kleifield

Electronically FILED by Superior Court of California, County of Los Angeles on 10/30/2019 06:29 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Barel, Deputy Clerk

1  Gretchen M. Nelson (State Bar No. 112566)
   gnelson@nflawfirm.com
2  Gabriel S. Barenfeld (State Bar No. 224146)
   gbarenfeld@nflawfirm.com
3  NELSON & FRAENKEL LLP
4  601 So. Figueroa Street, Suite 2050
   Los Angeles, CA 90017
5  Telephone: 213-622-6469
   Telecopier: 213-622-6019
6
7  Jules G. Radcliff Jr. (State Bar No. 72316)
   jradcliff@radcliffsaiki.com
8  RADCLIFF & SAIKI LLP
   21515 Hawthorne Blvd., Suite 1050
9  Torrance, CA 90503-6517
   Telephone: 310-698-0600
10 Telecopier: 310-698-0601
11 *Attorneys for Plaintiff*

12        SUPERIOR COURT FOR THE STATE OF CALIFORNIA
                FOR THE COUNTY OF LOS ANGELES
13

14 EVAN BIRENBAUM, an individual,          CASE NO.

15          Plaintiff,                      **COMPLAINT FOR DAMAGES FOR**

        v.
16                                          1. Breach of Contract;
   CRYPTOWATT MINING LLC, a                 2. Breach of The Implied Covenant of
17 Delaware limited liability company;         Good Faith and Fair Dealing;
   BITPOWER, LLC, a Delaware limited        3. Fraud;
18 liability company; BITPOWER              4. Negligent Misrepresentation
   MANAGEMENT, LLC, a Delaware             5. Recovery of Unpaid Wages, Labor
19 limited liability company; BITPOWER        Code § 201 Violation;
   INVESTMENT PARTNERS, LLC, a             6. Intentional Interference with Contract;
20 Delaware limited liability company;     7. Intentional Interference with
   BURRELL DIVERSIFIED                         Prospective Economic Advantage.
21 INVESTMENTS LLC, a Delaware limited
   liability company; TANGO & CASH, LLC,
22 a Delaware limited liability company;    **DEMAND FOR JURY TRIAL**
   CRYPTOWATT MANAGEMENT, LLC, a
23 Delaware limited liability company;
   CRYPTOWATT, INC., a Delaware
24 corporation; TOKENBLOCK, INC., a
   Delaware corporation; DANIEL
25 BURRELL, an individual; KEVIN
   WASHINGTON, an individual; FRED
26 VON GRAF, an individual; and DOES 1
   through 100,
27
            Defendants.
28

**COMPLAINT FOR DAMAGES**

Exhibit A

1    Plaintiff EVAN BIRENBAUM brings this action against Defendants CRYPTOWATT

2  MINING LLC, a Delaware limited liability company; BITPOWER, LLC, a Delaware limited

3  liability company; BITPOWER MANAGEMENT, LLC, a Delaware limited liability company;

4  BITPOWER INVESTMENT PARTNERS, LLC, a Delaware limited liability company;

5  BURRELL DIVERSIFIED INVESTMENTS, LLC, a Delaware limited liability company;

6  TANGO & CASH LLC, a Delaware limited liability company; CRYPTOWATT

7  MANAGEMENT, LLC, a Delaware limited liability company; CRYPTOWATT INC., a

8  Delaware corporation; TOKENBLOCK, INC., a Delaware Corporation; DANIEL BURRELL, an

9  individual; KEVIN WASHINGTON, an individual; FRED VON GRAF, an individual; and DOES

10  1 through 100, and alleges as follows.

11                              **INTRODUCTION**

12     1.     In or around 2017, Defendants, Daniel Burrell ("Burrell") and Kevin Washington

13  ("Washington") began to explore plans to build a facility in Montana to mine bitcoins. Bitcoin,

14  often described as a cryptocurrency, is a digital currency that is completely virtual.  Each bitcoin is

15  basically a digital asset stored in a "digital wallet." People can send bitcoins (or part of one) to a

16  digital wallet, where the receipt and transaction is verified by bitcoin miners and datacenters, like

17  the facility at issue in this case. The transaction is then recorded to a public ledger called a

18  blockchain. The miners, that verify transactions to the blockchain, are then rewarded with bitcoin

19  (or transaction fees) for providing such a service. Every transaction is recorded in a public list

20  which makes it possible to trace the history, if you know the wallet addresses, of bitcoins to

21  prevent the illegal transfer of coins from someone who doesn't own the coin or to prevent

22  duplicate transfers or undoing transactions.  Bitcoin networks (or nodes) are designed to verify

23  transactions, to the blockchain ledger, through solving complicated equations and algorythms,

24  which can be done at scale in large datacenters.

25     2.     Bitcoin is a completely decentralized digital currency.  The bitcoin economy has

26  grown since it was first developed in 2009 into an economy that is larger than that of some of the

27  world's smaller nations.  The value of a bitcoin has grown and fluctuated from pennies in its early

28  days to more than $19,000 in 2017.  The value in the month of October 2019 only fluctuated from

1    between $7,400 and $9,400. And to date in 2019, bitcoin value has ranged from a low of

2    approximately $3,100 to a high of $12,900.

3        3.      Bitcoin mining is the backbone of the bitcoin network.  Miners essentially issue

4    new bitcoins, confirm transactions and secure the network.  This is done using specialized

5    computers that process every bitcoin transaction by solving a computational mathematical

6    problem that allows them to chain together blocks of transactions (hence the term "blockchain"

7    which is applied to the bitcoin currency).  Miners are rewarded with newly-created bitcoins and

8    transaction fees.

9        4.      Although technically anyone can become a bitcoin miner, mining has become

10   increasingly specialized and is now largely done professionally by companies that are able to build

11   large data centers supplied by relatively inexpensive electricity in a cool climate.  The companies

12   either purchase or host specialized computer hardware that runs 24/7 creating bitcoins.

13       5.      As the value of bitcoins began to sore, defendants Burrell and Washington initially

14   began to procure bitcoin mining equipment from an individual who was heavily involved in

15   bitcoin, Joby Weeks. Burrell and Washington had limited, if any, knowledge on the building or

16   running of a mining company, including how to setup the equipment, what equipment and

17   infrastructure were needed, or the manner in which miners operate.  As a result when Burrell and

18   Washington started buying equipment from Weeks, Weeks flew Plaintiff and others to New

19   Mexico, to meet with Burrell, to discuss logistics as to the purchase of equipment and details as to

20   how to set up a mining company including technical, logistical and operational electrical

21   requirements.  Plaintiff provided critical input and information on these details.  From that

22   discussion, Burrell and Washington hatched a plan to build a data center. Burrell along with David

23   Bennett, who was a financial analyst for BDI, began modeling out financial projections to procure

24   mining equipment and operate the equipment at a yet unknown location. During the meeting,

25   Plaintiff provided the necessary insight into the preferred operation conditions for a data center

26   and explained that New Mexico, Burrell's preferred location, was not ideal.  Washington had ties

27   with Montana and as a result it was decided to look to locate the facility in Montana where

28   electricity is relatively cheap and the ambient temperature averages 45°.

- 3 –
COMPLAINT FOR DAMAGES

6.   However, defendants lacked the necessary technical or engineering skills to implement their plan. Plaintiff on the other hand was highly knowledgeable as to technical aspects of designing and operating the facility.  Defendants reached out to Plaintiff and lured him into working for them to, among other things, (i) lead and support efforts to secure locations for the mining facility or facilities; (ii) locate and negotiate or provide integral support for negotiations regarding a contract for an appropriate facility to house the bitcoin mining computer hardware; (iii) lead and support discussions with an electrical company to supply power to the facility; (iv) hold disussions with energy retailers to schedule power purchases in the energy market; (v) work with general contractors to build critical infrastructure to supply power to the facility; (vi) lead and support efforts to architect and build out the facilities; (vii) provide technical leadership and design of the overall datacenter and hire staff or resources for ongoing operations; and (viii) design and install the hardware in such a manner to maximize space and available electricity and operate efficiently so as to successfully mine bitcoin.

7.   In order to set their plan into motion, Defendants Daniel Burrell ("Burrell"), Kevin Washington ("Washington") and Burrell Diversified Investments, LLC ("BDI") formed a Delaware limited liability company that they called BitPower, LLC to own and operate the bitcoin plant. Upon information and belief at some point Defendants also formed another Delaware limited liability company entitled BitPower Management, LLC to be the manager and parent company of BitPower, LLC.  A few short months after forming the foregoing limited liability companies, Burrell and Washington renamed BitPower, LLC, CryptoWatt Mining, LLC.  And they renamed BitPower Management, LLC to CryptoWatt Management, LLC.  Upon information and belief in all respects the companies no matter the name operated in the same manner, held title to the same property and were owned by the same individuals or entities.  Unless otherwise stated, Defendants Burrell, Washington, Tango & Cash, LLC, BitPower, LLC, BitPower Management, LLC, CryptoWatt Mining, LLC and CryptoWatt Management, LLC are referred to herein collectively as the "CryptoWatt Defendants."

8.   Throughout the time that the CryptoWatt Defendants were negotiating with Plaintiff, they knew full well that the only way to convince Plaintiff to work for them was to offer

COMPLAINT FOR DAMAGES

1   him a highly lucrative contract that would afford him a nominal monthly salary, an ownership
2   interest in the operation and a significant percentage of the ultimate profits that would be earned
3   from the bitcoin mining facility.  Moreover, the CryptoWatt Defendants further knew that Plaintiff
4   was the key to their ability to design and develop a successful mining operation and without
5   Plaintiff, they would not be able to accomplish their goal.

6        9.      In or around early November 2017, the CryptoWatt Defendants convinced Plaintiff
7   to commence work on the project with the promise of a contract that would afford Plaintiff with a
8   base salary and shares in the operating entity as well as a percentage of the revenue to be earned
9   from the mining equipment.  Based on verbal and written representations made to him by the
10  CryptoWatt Defendants that Plaintiff would have a written contract containing the foregoing
11  terms, Plaintiff commenced work on the project in or around November 2017.  Ultimately, the
12  CryptoWatt Defendants presented Plaintiff with a contract nearly two months later, that modified
13  the original agreement to incorporate provisions that were less lucrative but provided for a base
14  salary, a signing bonus (but defendants modified the terms of the bonus to alter the date of
15  payment) and "Membership Unit Awards" comprised of options and a percentage of the
16  investments and distributions of revenue paid to the Cryptowatt Defendants.  Plaintiff was told
17  that the agreement was "good and fair" but it was also "take it or leave it."  Since by that time
18  Plaintiff had spent hundreds of hours working on the project and had provided the CryptoWatt
19  Defendants with vital intellectual property information and had not been paid any money, he was
20  left with no alternative but to sign the agreement to recover the money he was owed and the
21  potential earnings he was told he would receive.

22       10.     Plaintiff worked countless hours developing, engineering and creating the bitcoin
23  plant and by February 2018, he had succeeded in getting a portion of the plant to a position of
24  being operational.  There were many technical challenges because among other things, the power
25  company was delaying approvals for major upgrades to the site, and equipment from vendors had
26  to be delivered. Moreover, Burrell modified the schedule and pushed to have as least 3 megawatts
27  powered up by specific dates threatening Plaintiff and the contractors and others if they did not
28  meet his demands. Plaintiff and others worked night and day and Plaintiff was able with assistance

- 5 –
COMPLAINT FOR DAMAGES

1   to engineer a temporary solution to meet Burrell's demand to have the site up and running by the
2   end of February, even though Plaintiff informed Burrell that it would cause issues with the
3   downstream schedule.

4       11.     Future investors toured the facility as a part of Burrell's effort to get the company
5   to liquidity as fast as possible. During this period Plaintiff was working with David Bennett of
6   BDI on financial projections, and was part of the group leading discussions with investors.
7   Investors who visited the site, mentioned they had never seen such an amazing achievement, and
8   provided a rough estimated value of the site of $450 million.

9       12.     On or about February 28, 2017, Defendants suddenly and without warning forced
10  Plaintiff out and thereafter terminated the contract 30 days later.  Since then, Defendants have and
11  continue to refuse to pay or provide Plaintiff with the signing bonus or any of the revenue or
12  shares to which he was entitled.

13      13.     On information and belief, at all material times, the CryptoWatt Defendants never
14  intended to provide Plaintiff with the revenue or shares or the signing bonus but always intended
15  to lure Plaintiff into providing the technical services necessary to get the bitcoin plant up and
16  running and then terminate Plaintiff from employment so that Defendants could reap all of the
17  rewards from the bitcoin mining operation and avoid paying Plaintiff the substantial moneys he
18  was owed.

19      14.     Moreover, after he was terminated, Plaintiff discovered that TokenBlock, Inc., and
20  one of its principals, replaced Plaintiff.  The only way that the CryptoWatt Defendants could
21  terminate Plaintiff in order to avoid paying him in accordance with the contract, was to enter into a
22  deal to use the services of TokenBlock and TokenBlock's principal, Fred van Graf.  Van Graf
23  knew full well of the agreement between CryptoWatt and Plaintiff and on information and belief
24  intentionally acted to interfere with that contract so as to reap the benefits of a deal between
25  TokenBLock and the CryptoWatt Defendants.

**VENUE AND JURISDICTION**

27      15.     Venue is proper in this Court because at least one of the Defendants resides and
28  conducts business in this County and receives substantial compensation from the bitcoin plant at

- 6 -
COMPLAINT FOR DAMAGES

1   the heart of this lawsuit in this County. Further, the CryptoWatt Defendants reached out to

2   Plaintiff and entered into a contract with Plaintiff in this County and many of the acts complained

3   of occurred in this County and gave rise to the claims alleged herein.

4       16.    Additionally, jurisdiction in this court is appropriate since at least one of the

5   defendants resides in this County and is a citizen of the state of California, and the remaining

6   Defendants engaged in business and/or entered into contracts in this state and within this County.

7   <center>**PARTIES**</center>

8   **A.**    **Plaintiff**

9       17.    Plaintiff, EVAN BIRENBAUM ("Birenbaum"), is, and at all times mentioned

10  herein, was a resident of Los Angeles County, California.

11  **B.**    **Defendants**

12      18.    Defendant CRYPTOWATT MINING, LLC ("CryptoWatt Mining"), is and at all

13  material times was a limited liability company formed under the laws of the state of Delaware with

14  its principal place of business located in Montana.  In January 2018, BitPower, LLC was renamed

15  CryptoWatt Mining.  On information and belief, the members of CryptoWatt Mining are

16  Defendants Burrell, Washington and BDI.

17      19.    Defendant BITPOWER, LLC ("BitPower") is and at all material times was a

18  limited liability company formed under the laws of the state of Delaware with its principal place of

19  business located in Montana.  BitPower was formed in November 2017.  On information and

20  belief, the members of BitPower are Defendants Burrell, Washington and BDI.  In January 2018,

21  BitPower was renamed CryptoWatt Mining.

22      20.    Defendant BITPOWER MANAGEMENT, LLC ("BitPower Management") is and

23  at all material times was a limited liability company formed under the laws of the state of

24  Delaware with its principal place of business located in Montana.  BitPower Management was

25  formed in or around November 2017.  On information and belief, the members of BitPower

26  Management are Burrell and Washington.  In January 2018, BitPower Management was renamed

27  CryptoWatt Management, LLC.

28

<center>– 7 –
COMPLAINT FOR DAMAGES</center>

21.     Defendant, BITPOWER INVESTMENT PARTNERS, LLC, ("BitPower Investment") a Delaware limited liability company is an at all material times was a limited liability company formed under the laws of the state of Delaware with its principal place of business located in Montana.

22.     Defendant, BURRELL DIVERSIFIED INVESTMENTS, LLC ("BDI") is and at all material times was a Delaware limited liability company with its principal place of business located in either New Mexico or Colorado.  On information and belief, Burrell is a member of BDI.  BDI and Burrell and Washington formed CryptoWatt Mining and controlled and directed the operations of CryptoWatt Mining.

23.     Defendant, TANGO & CASH, LLC ("T&C"), is and at all material times was a Delaware limited liability company with its principal place of business located in either Colorado or California.  On information and belief, the members of T&C are Burrell and Washington.  On information and belief T&C was an entity that Burrell and Washington used to transfer funds from the bitcoin mining business and funds owed to Plaintiff were the responsibility of T&C.

24.     Defendant CRYPTOWATT MANAGEMENT, LLC ("CryptoWatt Management"), is and at all material times was a Delaware limited liability company with its principal place of business located in Montana. CryptoWatt Management is the parent of CryptoWatt Mining and BitPower.  In or around January 2018, BitPower Management was renamed CryptoWatt Management.  On information and belief, BDI and Defendants Daniel Burrell, Kevin Washington are the members of CryptoWatt Management.

25.     TOKENBLOCK, INC. ("Tokenblock"), is and at all material times was a Delaware Corporation with its principal place of business in Arizona.  Tokenblock was formed in or around 2016 by Plaintiff and Defendant Fred von Graf and Anthony Kosednar.  In or around January 2018, Tokenblock began to assist the CryptoWatt Defendants by providing service and technology consulting.  The initial ownership of Tokenblock was that Plaintiff owned 40% of the shares, Von Graf owned 40% of the shares and Kosednar owned 20%.  In or around March 2018, Von Graf forced Plaintiff out of Tokenblock.

26.    Defendant DANIEL BURRELL, an individual, is a resident and citizen of the State of Utah.

27.    Defendant KEVIN WASHINGTON, an individual, is a California resident and citizen and resides in the County of Los Angeles.

28.    Defendant FRED VON GRAF, an individual, is a resident and citizen of Arizona.

29.    Plaintiff is unaware of the true names and capacities of the remaining defendants sued in this action by the fictitious names DOES 1 through 100. Plaintiff will amend his complaint when those names and/or capacities become known to Plaintiff. Plaintiff is informed and believes that each of the fictitiously named defendants is in some manner responsible for the events and allegations set forth in this complaint.

30.    Defendants, and each of them, and DOES 1-100, were the agents, servants, employees, independent contractors, co-conspirators, management companies, subsidiaries, and/or joint venturers, of the remaining defendants, and each of them, and were at all times material hereto, acting within the authorized course, scope, and purpose of said agency, employment or relationship, and/or that all said acts were subsequently performed with knowledge, acquiescence, ratification and consent of the respective principals, and the benefits thereof accepted by said principals.

31.    On information and belief, BitPower, BitPower Management, BitPower Investment, T&C, CryptoWatt Mining and CryptoWatt Management are not properly organized limited liability corporations and are merely instrumentalities of Burrell, Washington and BDI. Each of the foregoing limited liability companies were undercapitalized for purposes of corporate undertakings and these entities observed little or no corporate formalities.  BitPower, BitPower Management, BitPower Investment, T&C, CryptoWatt Mining and CryptoWatt Management were formed solely for the benefit of the dominant members of the companies.  Upon information and belief, BitPower, BitPower Management, BitPower Investment, T&C, CryptoWatt Mining and CryptoWatt Management have little or no corporate records and their existence is a mere façade for the individual dealings of its dominant members.  As a result, of the failure to maintain

1  corporate formalities and for the reasons stated herein, the owners of BitPower, BitPower

2  Management, BitPower Investment, T&C, CryptoWatt Mining and CryptoWatt Management must

3  be held liable for the actions of these entities.

4  <div align="center">**FACTS**</div>

5  **A.     The Bitcoin Industry**

6         32.     Bitcoin, often described as a cryptocurrency, is a digital currency that is completely

7  virtual.  Each bitcoin is basically a digital asset stored in a "digital wallet."  People can send

8  bitcoins (or part of one) to a digital wallet, where the receipt and transaction is verified by bitcoin

9  miners and datacenters, like the facility described in this case. The transaction is then recorded to a

10  public ledger called a blockchain. The miners are rewarded with bitcoin (or transaction fees) for

11  providing their services. Bitcoin networks (or nodes) are designed to verify transactions, to the

12  blockchain ledger, through solving complicated equations and algorithms, which can be done at

13  scale in large datacenters.

14         33.     Bitcoin is a completely decentralized digital currency.  The bitcoin economy has

15  grown since it was first developed in 2009 into an economy that is larger than the economies of

16  some of the world's smaller nations.  The value of a bitcoin has grown and fluctuated greatly from

17  pennies in its early days to more than $19,000 in 2017.  The value of one bitcoin in October 2019

18  fluctuated between $7,400 and $9,400.

19         34.     Traditional currencies are issued by central banks. The central bank can issue new

20  units of money based on a variety of issues.  Bitcoin differs from a central bank in that the

21  issuance rate is set in the computer code thus preventing cheating of the system or the creation of

22  bitcoins out of thin air.

23         35.     Bitcoin are entirely digital tokens that don't require excavation or panning streams

24  to extract gold or some other element or mineral.  But, bitcoin does involve a form of prospecting

25  and recovery and thus the nomenclature "mining" is used to explain the process.  Bitcoin miners

26  download and run mining software and often join a pool of other miners doing the same thing.

27  Together or alone, the software compiles recent bitcoin transactions into blocks and proves their

28  validity by calculating a "proof of work," that covers all of the data in the blocks. That involves

<div align="center">- 10 -

COMPLAINT FOR DAMAGES</div>

1  mining hardware taking a huge number of guesses at a particular integer over and over until they

2  find the correct one.

3      36.    Bitcoin mining is a computationally intense process that is further hampered by

4  deliberate increases in difficulty as more and more miners attempt to create the next block in the

5  chain. This is one of the reasons that people join pools and why only the most powerful of

6  application specific integrated circuit (ASIC) mining hardware is effective at mining bitcoins

7  today.

8      37.    The individual miner or pool that is the first to create the proof of work for a block

9  is rewarded with transaction fees for those confirmed transactions and a subsidy of bitcoins which

10  are generated through the process of mining. That will continue to happen until all 21 million

11  bitcoins have been mined.  With bitcoin, miners are rewarded essentially every 10 minutes.

12      38.    There is no guarantee that any one miner or mining pool will generate the correct

13  integer needed to confirm a block and thereby earn the reward. Finding a block most closely

14  resembles a type of network lottery. For each attempt to try and find a new block, which is

15  basically a random guess for a lucky number, a miner has to spend a tiny amount of energy. Most

16  of the attempts fail and a miner will have wasted that energy. Only once, generally about every ten

17  minutes, will a miner succeed and thus add a new block to the blockchain.

18      39.    This also means that any time a miner finds a valid block, it must have statistically

19  burned much more energy for all the failed attempts. This "proof of work" is at the heart of

20  bitcoins success.  Proof of work prevents miners from creating bitcoins out of thin air: they must

21  burn real energy to earn them. And proof of work ossifies Bitcoin's history. If an attacker were to

22  try and change a transaction that happened in the past, that attacker would have to redo all of the

23  work that has been done since to catch up and establish the longest chain. This is practically

24  impossible and is why miners are said to "secure" the bitcoin network.

25      40.    In exchange for securing the network, and as the "lottery price" that serves as an

26  incentive for burning this energy, each new block includes a special transaction. It is this

27  transaction that awards the miner with new bitcoins, which is how bitcoins first come into

28  circulation. At bitcoins launch, each new block awarded the miner with 50 bitcoins, and this

1  amount halves every four years: Currently each block includes 12.5 new bitcoins. Additionally,

2  miners retain any mining fees that were attached to the transactions included in their blocks.

3      41.    Bitcoin mining is thus the backbone of the bitcoin network.  Miners essentially

4  issue new bitcoins, confirm transactions and secure the network.  This is done using specialized

5  computers that process every bitcoin transaction by solving a computational mathematical

6  problem that allows them to chain together blocks of transactions.

7      42.    Although technically anyone can become a Bitcoin miner, over the years, mining

8  became increasingly specialized and is now largely done professionally by companies that are able

9  to build large data centers supplied by relatively inexpensive electricity in a cool climate.  These

10  corporate miners purchase a large number of specialized computer hardware that runs 24/7 mining

11  code to create Bitcoins.

12  **B.    Defendants' Scheme to Build a Bitcoin Plant**

13      43.    In or around 2017, defendants Burrell and Washington first began procuring bitcoin

14  mining equipment.  They met with a gentleman named Joby Weeks, a strong proponent of Bitcoin,

15  with connections to, among other things, a mining pool network called BitClub Network.  Weeks

16  provided Burrell and Washington with information on how the defendants could enter the Bitcoin

17  mining industry and after first agreeing to purchase equipment from Weeks and others, Defendants

18  came upon the idea of building a plant in Montana to host bitcoin mining equipment but lacked the

19  technical skills or ability to do so.  It was only as a result of discussions with Plaintiff that

20  Defendants realized that utilizing Plaintiff's services they could build and host a plant.  The

21  concept was to build or find a facility in Montana to host the computer hardware necessary to

22  mine Bitcoin with the intent to lease the facility to miners in exchange for a fee.  Weeks was

23  originally to be a partner of Burrell and Washington in the bitcoin plant.

24      44.    Burrell and Washington began to alter their plan as they continued to meet and

25  discuss issues with Weeks.  Ultimately, they decided to develop a facility that would host mining

26  equipment and they decided that they too would purchase mining equipment so that defendants

27  could themselves mine Bitcoin and benefit from the then-very high price of the currency.

28

45.     Ultimately Burrell and Washington purchased bitcoin mining machines from BitFury and BitMain.

46.     Integral to defendants' plan was the need to locate someone who was capable of engineering and building the necessary mainframe to house the equipment, redesigning, if necessary, the facility, as well as someone with knowledge of the electrical requirements so as to insure adequate wattage to run the mining equipment.  In addition, defendants needed someone with the knowledge of electrical suppliers so as to negotiate the necessary agreements for electrical service.  Defendants were themselves neophytes in the foregoing areas and lacked the necessary expertise to get the plan off the ground.

47.     In or around October 2017, Weeks introduced Burrell and Washington to Plaintiff in Los Angeles, California.  Plaintiff is an expert in the development of cross-infrastructure analytics and technology for big data applications. He is a much sought-after provider in the U.S. market for the design and development of technology tools to power e-commerce, and has been at the forefront of the development and market application of behavioral energy efficiency technology.  At the time that he was introduced to Burrell and Washington, Plaintiff had recently left employment as the program manager for Environmental Strategy and Sustainability at Southern California Edison (SCE), where he was responsible for the development and implementation of SCE's corporate responsibility and sustainability program. At SCE, Plaintiff had worked with company executives, business managers, regulators, NGO's, and internal and external stakeholders on a variety of issues relating to energy and water availability.  Plaintiff has an extensive background in technology and has all of the necessary skills to design and implement the bitcoin plant.  In addition, he has the necessary experience dealing with electrical suppliers to negotiate agreements that would provide sufficient energy at a sustainable price.

48.     Initially Plaintiff was courted by Weeks and Burrell to join the project.  However, in mid-November 2017, Burrell instructed Plaintiff to tell Weeks that Weeks was out of the project while they were all meeting at Washington's home in Los Angeles.  Plaintiff was only interested in participating if he received sufficient compensation that would include an interest in the assets and revenue of the mining.  Burrell and Washington assured Plaintiff that he would be

1   compensated not only with a salary but that he would also receive an interest in the company

2   formed to own the assets including the mining equipment and the ultimate profit earned by the

3   company.

4        49.    Among other things, during this period, the CryptoWatt Defendants were

5   forecasting revenue for 2018 at approximately $112 million, 2019 at $712 million and gross

6   profits for 2018 at $98 million and $645 million in 2019.

7        50.    Based on Burrell and Washington's representations, Plaintiff commenced work

8   shortly after the first meeting which occurred on October 30, 2017.  Plaintiff was reporting to

9   Burrell and Joby Weeks who at the time was working with Burrell on the development of the

10  project.  In or around the middle of November, Plaintiff was informed that the entities that would

11  be formed for the project would be formed under the name BitPower.  Plaintiff was also told to

12  inform Weeks that he was out of the project.

13       51.    The CryptoWatt Defendants were at the time looking to lease land next to an

14  electrical substation in or around Anaconda, Montana and were planning on doing a "greenfield

15  buildout."  However, in or around November 2017, the CryptoWatt Defendants heard that there

16  was an abandoned electrical substation that was coming onto the market near Butte, Montana and

17  they entered into negotiations to purchase the facility for the purpose of mining bitcoin and

18  hosting bitcoin mining equipment.  The facility was an old electrical substation for MSE

19  Technology Applications, Inc. a 1970's joint venture between the federal government and a not-

20  for-profit group to test "clean coal technology" that ultimately folded.  The CryptoWatt

21  Defendants succeeded in acquiring the facility in or around early January 2018 for approximately

22  $4.5 million.

23       52.    In the course of a few weeks in early November, 2017, Plaintiff traveled to various

24  countries including Malaysia, Australia and Republic of Georgia to look at other bitcoin sites for

25  purposes of researching the projects.  Following that whirlwind tour, Plaintiff returned to the

26  United States and engaged in meetings with Burrell and Washington who began negotiating

27  certain terms for Plaintiff's ongoing work.  In or around November 2017, Plaintiff met with

28

1 CryptoWatt Defendants' representative Rick Tabish at the facility in Butte to review the site and

2 determine whether the site would be acceptable for the project.

3     53.    In addition, Plaintiff commenced work in conjunction with various contractors to

4 engineer the site from an energy perspective and to structure the architecture for the placement of

5 the servers and the racks so that the space could be optimized for operations.  He also was

6 responsible for designing the racks.  The pace at which the CryptoWatt Defendants were forcing

7 operations was feverish.  Burrell and his cohorts were demanding round the clock work from

8 everyone in order to get the plant up and running.  Burrell had, among other things, obtained

9 financing leveraging BDI and or its assets and was determined to force the plant into operation

10 within weeks.  At or around that time, Plaintiff suggested that the CryptoWatt Defendants retain

11 contractors to assist in the development of the plant.  Von Graf at that time suggested that he be

12 retained to assist given the pressure of work required to complete the plant build out and Von Graf

13 suggested that he would work with the electrical engineers while Plaintiff focused on the general

14 architecture and design.

15     54.    Ultimately, Plaintiff and Kosednar worked on and designed the racks and breaker

16 systems. Von Graf was hired to work on procuring wires and cables and later on staffing for the

17 site.  All of this was to be done by Tokenblock but unknown to Plaintiff, Von Graf created a new

18 company and funneled money into the new company instead of Tokenblock.  Plaintiff and lawyers

19 retained by the CryptoWatt Defendants engaged in the negotiations with various energy

20 companies for a power contract and then after the selection of the power company, Plaintiff and

21 the lawyers negotiated the contract.  The electrical upgrade for the substation was to be

22 accomplished by Barnard Construction and Tabish became what was essentially a general

23 contractor on site coordinating with the people on the ground as the buildout was done.  Tabish

24 also dealt with permitting locally as well as cleanup of the site when first purchased.  Burrell and

25 Washington were directing all operations and contributing financially to the buildout either

26 through cash or equipment

27

28

55.     Neither Burrell or Washington or anyone else associated with the CryptoWatt Defendants had sufficient technical knowledge to build the plant and they needed Plaintiff to accomplish their goal to build a bitcoin plant that would be operational quickly and efficiently.

56.     Throughout the period from November to December 2017, Plaintiff spent countless hours working day and night to engineer the bitcoin plant.  Among other things Plaintiff accomplished the following during this period: the negotiation of power contracts to run the plant, the complete design and buildout of the physical infrastructure for the servers, the design and development of the internal portion of the plant so as to allow the operation to run efficiently.

57.     In or around November 2017, Burrell and Washington formed BitPower to hold title to the facility and operate the Bitcoin plant.  Burrell and Washington represented to Plaintiff that ownership of the mining equipment would be placed in an entity entitled T&C.  In addition, Burrell and Washington formed BitPower Management as the holding company for BitPower. Defendants represented to Plaintiff that he would be provided with an employment contract with BitPower that would provide him with an annual salary, a signing bonus and shares of the profits realized from the operation of the plant.  The signing bonus was intended to act as payment for services provided in November and December, 2017.

58.     Throughout November and December 2017, Plaintiff repeatedly asked Burrell and Washington to provide him with the promised employment contract. Defendants repeatedly assured Plaintiff that the agreement would be forthcoming.  Based on those assurances Plaintiff continued to provide services critical to the development of the bitcoin plant.

59.     During this period, Plaintiff worked primarily in Los Angeles with occasional trips to Burrell's private residence in Colorado for meetings and trips to Montana to examine the plant facility.

60.     Although Plaintiff repeatedly asking for a written agreement, the CryptoWatt Defendants ignored his requests.  Ultimately the CryptoWatt Defendants revised and modified a form agreement that Plaintiff submitted to them in mid-December 2017.  But the CryptoWatt Defendants made changes that were not consistent with the parties' oral agreement.  Burrell presented Plaintiff with a written agreement dated December 31, 2017 (the "December 31

- 16 –
COMPLAINT FOR DAMAGES

1    Agreement"), that referenced a start date of December 31, 2017 – even though Plaintiff had by

2    then provided hundreds of hours of work on the project. Burrell made clear that the December 31

3    Agreement was a "take it or leave it." Moreover, Burrell falsely represented to Plaintiff that

4    Plaintiff would receive more from the operations of the business under the December 31

5    Agreement claiming that the CryptoWatt Defendants were planning on an Initial Public Offering.

6        61.     The December 31 Agreement provided Plaintiff with a base salary of $240,000 per

7    year for which Defendants were to be responsible for payroll deductions and all required

8    withholdings; a signing bonus of $100,000 "upon the successful installation of the first order;"

9    options of "8% shares of the Membership Units made up of BitPower LLC which will vest

10   immediately upon execution" of December 31 Agreement; and 5% of "Tango and Cash

11   investments or BitPower Investment Partners ('InvestCo') or investments in bitcoin mining

12   equipment, services or programs or distributions paid back after the principal investment is made

13   up from the initial investment." The latter provision was to provide Plaintiff with an ownership

14   interest in the BitFury and BitMain equipment that Burrell and Washington had purchased.

15        62.     The December 31 Agreement was purportedly between Plaintiff and BitPower

16   which at that time had been formed for the purpose of operating the bitcoin plant. The

17   "Membership Unit Awards" identified in the agreement were subject to and in accordance with an

18   operating agreement of BitPower and BitPower Investment Partners. Although Plaintiff requested

19   a copy of the operating agreement, Burrell and Washington did not provide Plaintiff with a copy

20   of the alleged operating agreement and to this date Plaintiff has never received a copy of the

21   operating agreement between BitPower and BitPower Investment Partners. However, Plaintiff

22   was repeatedly assured that his ownership of interests had been properly documented in that

23   operating agreement.

24        63.     Upon receipt of the December 31 Agreement, Plaintiff contacted Burrell and

25   Washington to discuss the agreement. Plaintiff was effectively told that it was take it or leave it.

26   By then, Plaintiff had invested a significant amount of time in the project and he had yet to be paid

27   any money for his services. Forced to accept the agreement, Plaintiff signed the December 31

28

1   Agreement with the understanding that he would be paid for all work he performed both prior to

2   and after execution of the agreement.

3       64.    Plaintiff continued to invest a significant amount of his time and energy in to the

4   development of the bitcoin plant.  Throughout the period from January 2018 to February 2018,

5   Plaintiff worked day and night.  The CryptoWatt Defendants were driving hard to have the bitcoin

6   plant up and running by the end of February 2018.  And Plaintiff's services were integral to the

7   accomplishment of that goal.

8       65.    When Tokenblock was brought in to assist, Von Graf knew at all material times

9   that Plaintiff had an agreement with the CryptoWatt Defendants for his services that was

10  independent of the agreement between Tokenblock and the CryptoWatt Defendants.  Von Graf

11  further knew that Plaintiff would receive significant benefits as a result of his ownership interest in

12  CryptoWatt.  At all material times, as an owner, officer and director of Tokenblock, Von Graf

13  owed a fiduciary duty not only to Tokenblock but to Plaintiff who was a co-owner and officer and

14  director of Tokenblock.

15      66.    Unknown to Plaintiff, after he brought Von Graf in to assist with the project, the

16  CryptoWatt Defendants and Von Graf began discussions which were aimed at cutting Plaintiff out

17  of the ongoing running of the bitcoin plant.

18      67.    In or around January 2018, Plaintiff was informed that he should make certain that

19  amendments were made to the corporate documents forming BitPower to change the name to

20  CryptoWatt Mining and further to change the name of BitPower Management to CryptoWatt

21  Management.  Plaintiff was unaware that the CryptoWatt Defendants were also forming other

22  companies purportedly to divert funds away from the entities in which Plaintiff purportedly held

23  an ownership interest.

24      68.    On or about January 26, 2018, Plaintiff was first informed by Burrell that Plaintiff's

25  membership units were never included in the operating agreements as required by the December

26  31 Agreement.  Plaintiff was told that this would be done and that an amended agreement would

27  be prepared.  In an email dated January 26, 2018, Plaintiff wrote to John Fullerton of BDI, ccing

28  Burrell and stating: "Can you send me the CryptoWatt and Host Co operating agreements that

1 Kevin signed?  In addition, I just got off the phone with Dan and it sounds like we didn't include
2 my member units in the first agreement.  He recommended we put together an amended agreement
3 with my member units respectively."

4        69.    Mr. Fullerton wrote back to Plaintiff on January 26, 2018 the following: "Evan:
5 Please find the executed CryptoWatt Management, LLC and CryptoWatt, LLC operating
6 agreements attached.  Kevin only signs the Management level.  The HostcoLLC Agreement has
7 not ben finalized and will be signed by BMH and CryptoWatt.  I will need direction as to your
8 units as it has always been communicated as 50/50.  Will these units be in CryptoWatt
9 Management LLC?"  In response Plaintiff wrote: "8% of CryptoWatt, And 5% of investments
10 after capital repayment out of the T&C / investment co."  And, Mr. Fullerton wrote back
11 "Understood, that will not be too difficult to amend."

12        70.    Based on the foregoing, Plaintiff understood that his interests were adequately
13 documented confirming his interests in CryptoWatt and the T&C investment company.  Unknown
14 to Plaintiff, his interests were never documented and the CryptoWatt Defendants have refused to
15 acknowledge his interests or to pay Plaintiff any of the funds due to him.

16        71.    In addition to all of his work in November and December 2017, Plaintiff Plaintiff
17 worked tirelessly throughout January and February 2018 and ultimately as a result of his efforts,
18 the bitcoin plant successfully came on line the last week of February 2018/first week of March.
19 Prior to or at that time, there were numerous orders that had been placed clearly satisfying the
20 provision in the December 31 Agreement that Plaintiff be paid a "signing bonus of $100,000 []
21 upon the successful installation of the first order."

22        72.    After the CryptoWatt Defendants knew that the plant would be operational,
23 defendants suddenly and without warning, announced to Plaintiff on February 28, 2018, that he
24 was being terminated from employment and that he was not to perform any further work on the
25 bitcoin plant.

26        73.    At the time of his termination, the CryptoWatt Defendants had only paid Plaintiff a
27 total of $40,000, although he was owed far more, including, but not limited to, the $100,000
28 signing bonus and the salary owed for his work through March 2018 – the date that Defendants

1  represented his employment was contractually concluded.  Further the CryptoWatt Defendants

2  failed entirely to make payments in accordance with the terms of the December 31 Agreement

3  which required that the defendants pay Plaintiff his salary less applicable payroll deductions and to

4  make all required withholdings.  The CryptoWatt Defendants did not pay Plaintiff for the work

5  that he performed from October to December, 2017.  Nor have the CryptoWatt Defendants

6  compensated Plaintiff for any of the ownership interests he was due from CryptoWatt Mining or

7  the interest in T&C.

**FIRST CAUSE OF ACTION**

**(Breach of Contract as to the BitPower Mining, LLC, CryptoWatt Mining, LLC, Tango &**

**Cash, LLC, Burrell Diversified Investments LLC, Daniel Burrell, Kevin Washington,**

**and DOES 1 through 50)**

12  74.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through

13  73 above, as if fully set forth herein.

14  75.  At all times material hereto, there existed as between Plaintiff and the CryptoWatt

15  Defendants, an agreement whereby Defendants promised to pay Plaintiff for his services in

16  accordance with the terms of the December 31 Agreement. Among other things, the terms of the

17  agreement required that Defendants pay Plaintiff an annual salary less applicable payroll

18  deductions and all required withholdings in bi-weekly installments, a signing bonus of $100,000

19  upon successful installation of the first order; and options of 8% shares of the Membership Units

20  made up of BitPower; 5% of investments in bitcoin mining equipment, services or programs or

21  distributions paid back after the principal investment is made up from the initial investment. A

22  true and correct copy of the December 31, 2017 Agreement is attached hereto as Exhibit 1.

23  76.  The Agreement was in all respects a contract of adhesion. Plaintiff continually

24  requested an agreement from the moment that he commenced providing services to the

25  Defendants in or around November 2017 and Defendants continually promised him an

26  agreement. In consideration of those promises, Plaintiff commenced working on the bitcoin

27  plant and by December 31, 2017 had provided extensive services for which he had not been

28  paid.  Plaintiff had no option but to sign the Agreement when Defendants provided him with

1 the December 31 Agreement in order to ensure that he was paid for the services that he had

2 rendered.  Clauses in adhesion contracts giving the stronger party, the drafter, discretionary

3 rights to change the deal must be exercised in good faith, and the conduct must be objectively

4 reasonable consistent with the reasonable expectations of weaker parties.

5       77.    Plaintiff was effectively forced to execute the Agreement on December 31, 2017

6 in order to ensure that he received payment for the services that he had provided and to receive

7 the benefits that he had been promised.  At all times material hereto, Plaintiff performed all

8 obligations that he was required to perform under the December 31 Agreement. Plaintiff

9 engineered, built and completed the bitcoin plant which became operational in late February

10 2018.

11       78.    Plaintiff did nothing to justify Defendants terminating him for "cause" as defined

12 in the agreement and Plaintiff did not resign for "good reason."  Rather, Defendants unilaterally

13 and without cause terminated Plaintiff on or about February 28, 2018, and thereafter sought to

14 force him to sign another agreement to rescind the December 31 Agreement.  The "Rescission

15 Agreement and Mutual Release" ("Rescission Agreement"), incorrectly stated that the

16 December 31 Agreement "contains material mistakes and errors" and that the December 31

17 Agreement was "not in accord with the parties' common intention" and that the employment

18 relationship allegedly never commenced.  Further, Defendants sought to force Plaintiff to sign

19 the Rescission Agreement which also incorrectly stated that Plaintiff had received all payments

20 and benefits owed to him so as to obtain a release by Plaintiff of all his claims against the

21 Defendants.  Plaintiff refused to sign the Rescission Agreement even though Burrell told him

22 he would "rip [Plaintiff's] head off if he didn't sign" the Rescission Agreement.  To this date

23 Plaintiff has never signed the Rescission Agreement.

24       79.    At all material times, Plaintiff resided in Los Angeles, California and performed

25 a significant amount of his duties in a California.  Although the December 31 Agreement

26 provided ambiguously that the "location" was "Butte, Montana. Aspen, Colorado," at all

27 material times, Plaintiff worked primarily out of Los Angeles, California and Defendants were

28

well aware of that fact throughout the period that Plaintiff performed services for the Defendants.

80.     Defendants breached the contract by failing to pay Plaintiff for his services including failing to pay the $100,000 signing bonus and failing to provide options of 8% shares of Membership Units of CryptoWatt and 5% of T&C or CryptoWatt Investment or investments in bitcoin mining equipment, services or programs or distributions as described above.  Moreover, Defendants failed to make the necessary withholdings for taxes with respect to the limited payments they made to Plaintiff, as they were contractually required to do.

81.     As a result of Defendants' breach, Plaintiff has been damaged in an amount to be established at trial.

## SECOND CAUSE OF ACTION

**(Breach of the Implied Covenant of Good Faith & Fair Dealing as to Defendants BitPower Mining, LLC, CryptoWatt Mining, LLC, Tango & Cash LLC, Daniel Burrell, Kevin Washington, Burrell Diversified Investments LLC and DOES 1 through 50)**

82.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 81 above, as if set forth fully herein.

83.     Both parties to an employment relationship have a duty not to do anything that prevents the other party from receiving the benefits of their agreement. Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another.  Generally speaking, this means being faithful to one's duty or obligation.

84.     Plaintiff and Defendants entered into a written employment contract and Plaintiff substantially performed all of the duties required of him under the contract.

85.     Defendants promised Plaintiff that they would provide him with a salary, signing bonus, options of shares of Membership Units and a percentage of the investments as described above.  Despite making this written promise, Defendants have and continue to fail to pay Plaintiff the signing bonus, salary owed to Plaintiff, the options or the percentage of investments as described above.

- 22 -
COMPLAINT FOR DAMAGES

86.     Defendants' conduct was a direct result of Defendants' failure to act fairly and in good faith and to comply with the terms of the contract.

87.     Further, Plaintiff is informed and believes and thereon alleges that Defendants engaged in a course of conduct that was intended to oppress and dissuade Plaintiff from seeking the benefits due to him under the contract including by demanding that Plaintiff sign a "rescission agreement" that would effectively have rescinded the December 31 Agreement.

88.     Defendants have refused to fulfill their obligations under the December 31 Agreement and their refusal has been done with a conscious disregard for the rights of Plaintiff. These acts were done with the knowledge and approval and ratification of Defendants and each of them and each of their officers, directors and other managing employees.

89.     As a direct and proximate result of the aforementioned unreasonable and bad faith conduct of Defendants, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest, and other economic and consequential damages, for a total amount to be shown at the time of trial.

90.     As a proximate result of the unreasonable and bad faith conduct of Defendants, and each of them, Plaintiff was compelled to retain legal counsel to obtain the benefits due him under the agreement. Therefore, Defendant is liable to Plaintiffs for those attorneys' fees, witness fess, and costs of litigation reasonably necessary and incurred by Plaintiff in order to obtain the benefits under the agreement, in a sum to be determined at the time of trial.

## THIRD CAUSE OF ACTION

**(For Fraud as to Defendants Cryptowatt Mining LLC, Bitpower, LLC, Bitpower Management, LLC, Bitpower Investment Partners, LLC,  Burrell Diversified Investments LLC, Tango & Cash, LLC, Cryptowatt Management, LLC, Cryptowatt, Inc., Daniel Burrell, Kevin Washington and DOES 1 through 50)**

91.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 73 above, as if fully set forth herein.

92.     Defendants deliberately made false and misleading statements to Plaintiff that they would provide pay him for his services and further that they would insure that he receive options

of Membership Units and a percentage of the profits of the bitcoin plant.  At the time that Defendants made those statements they knew that they were false.

93.    Defendants intended to induce and did induce Plaintiff to rely on their misrepresentations so that Plaintiff would expend extensive efforts and work necessary to design and develop the Bitcoin plant and to get the plant up and running.  Moreover, Defendants knew that Plaintiff would rely on the false and misleading statements in working to engineer, design and complete the plant.

94.    Unaware that Defendants had embarked upon the scheme to obtain the benefits of Plaintiff's work on the bitcoin plant without any intention to pay him, Plaintiff justifiably relied on Defendants' false and misleading statements and thus was induced into providing extensive services that led to the completion and operation of the bitcoin plant.

95.    Had Plaintiff known the true facts regarding the Defendants' scheme, Plaintiff would not have worked on the bitcoin plant and would have declined to expend time and money assisting in the development of the plant.

96.    As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff has suffered injury and substantial damage in an amount estimated to be well in excess of $20 million.  The precise amount of Plaintiffs damages is not known at this time but it shall be proven at trial.

97.    Defendants' fraudulent conduct was undertaken with a conscious disregard of the rights and interests of Plaintiff, and for the purpose of enriching themselves and jeopardizing Plaintiff's financial well-being.  In making the foregoing material misrepresentations, omissions of material fact and in undertaking the foregoing wrongful acts, Defendants acted maliciously, oppressively and with the intent to defraud Plaintiff.  Plaintiff is, by reason thereof, entitled to recover punitive and exemplary damages in an amount sufficient to punish and to make an example of Defendants.

## FOURTH CAUSE OF ACTION

**[For Negligent Misrepresentation Against Defendants Cryptowatt Mining LLC, Bitpower, LLC, Bitpower Management, LLC, Bitpower Investment Partners, LLC,  Burrell Diversified Investments LLC, Tango & Cash, LLC, Cryptowatt Management, LLC, Cryptowatt, Inc., Daniel Burrell, Kevin Washington  and Does 1-50]**

98.     Plaintiff realleges and incorporates by reference paragraphs 1 through 73 of the Complaint.

99.     Throughout the period from October 2017 through February 2018, Defendants made representations to Plaintiff regarding the benefits that he would earn by providing services for the development of the bitcoin plant.

100.     Defendants recklessly and/or negligently made the foregoing false and misleading statements without reasonable grounds for believing them to be true.

101.     Defendants intended to induce Plaintiff to rely on the foregoing statements and/or representations, and/or Defendants knew that Plaintiff would rely on the foregoing statements and/or representations in making decisions to continue to work to build the bitcoin plant.

102.     Plaintiff justifiably relied on Defendants' statements and were induced to work on the plant and forego other employment.

103.     Had Plaintiffs known the true facts regarding the Defendants' scheme, Plaintiff would not have agreed to provide any services, nor would he have worked to develop the bitcoin plant.

104.     As a direct and proximate result of Defendants' negligent misrepresentations and/or omissions, Plaintiff has suffered injury and substantial damage in an amount estimated to be in excess of $20 million.  The precise amount of Plaintiff's damages is not known at this time but it shall be proven at trial.

**FIFTH CAUSE OF ACTION**

**(For Recovery of Unpaid Wages Against Defendants BitPower Mining, LLC, CryptoWatt Mining, LLC, Tango & Cash LLC, Daniel Burrell, Kevin Washington, Burrell Diversified Investments LLC and Does 1-50)**

105.    Plaintiff incorporates herein and by reference each and every allegation contained in Paragraph 1 through 73, inclusive, of this Complaint as if fully set forth herein.

106.    Pursuant to the December 31, 2017 Agreement between Plaintiff and the CryptoWatt Defendants, the CryptoWatt Defendants are required to pay Plaintiff for his services in designing and building the bitcoin plant in accordance with the agreement.

107.    In addition, Plaintiff is entitled to compensation and other amounts specified in the December 31 Agreement.

108.    Effective as of March 31, 2018, Defendants gave notice that they were terminating Plaintiff's services.

109.    As of the effective date of his termination, Defendants had only paid Plaintiff $40,000 and has failed and refused to pay any of the additional amounts due to him for his work on the bitcoin plant in accordance with the December 31 Agreement.

110.    Defendants' failure to pay the full amount due to Plaintiff on termination violates the provisions of Labor Code § 201.

111.    There is now due and owing to Plaintiff a sum in an amount to be proven at trial. Defendants have failed and refused, and continue to fail and refuse, to pay Plaintiff's wages.

112.    Pursuant to Labor Code § 218.5, Plaintiffs request the Court award Plaintiff reasonable attorneys' fees and costs incurred by him in this action. Pursuant to Labor Code § 203, Plaintiff requests that the Court award penalties and interest against Defendants for their willful failure to pay wages of an employee who is discharged.

## SIXTH CAUSE OF ACTION

### For Intentional Interference with Contract

### Against Defendants Tokenblock, Von Graff and Does 51-100

113.    Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 73, inclusive, of this Complaint as if fully set forth herein.

114.    At all relevant times, Defendants knew of the existence of the December 31 Agreement between Plaintiff and the CryptoWatt Defendants, as described above.

115.    Defendants further knew that Plaintiff's work was integral to the development of the bitcoin plant and knew that in order for the plant to maintain operations it required the work of individuals like Plaintiff with the technological ability to maintain the plant.  Defendants further knew that Plaintiff's expertise was necessary to get the plant operating.

116.    Because of this, Defendants knew at all relevant times that the CryptoWatt Defendants required Plaintiff's services to get the plant operating and to maintain the operations of the bitcoin plant but Defendants also knew that they had the ability to maintain the plant once it was operational.

117.    Plaintiff is informed and believes and thereon alleges that in an effort to interfere with Plaintiff's rights under the December 31 Agreement, Defendants began to undercut Plaintiff to the CryptoWatt Defendants in an attempt to convince the CryptoWatt Defendants to terminate Plaintiff once the plant was operational so that Defendants could take over and benefit from the lucrative contract that Plaintiff had with the CryptoWatt Defendants.

118.    Plaintiff is informed and believes and thereon alleges, that he was terminated by the CryptoWatt Defendants on February 28, 2018, effective March 31, 2018 due to the interference by the Defendants who convinced the CryptoWatt Defendants to terminate Plaintiff under the ruse that Defendants would maintain the plant's operations and that the CryptoWatt Defendants could avoid paying Plaintiff the monies he was owed.

119.    Defendants engaged in the conduct alleged herein with the intent to harm Plaintiff financially and to induce the CryptoWatt Defendants to violate the December 31 Agreement,

1   and/or to make the contractual relationship between Plaintiff and the CryptoWatt Defendants less

2   financially lucrative to Plaintiff.

3        120.   As a proximate result of the conduct of Defendants as alleged herein, Plaintiff was

4   damaged in an amount in excess of $20 million dollars, the exact amount of which will be proven

5   at time of trial.   When Plaintiff has ascertained the full amount of his damages, he will seek leave

6   of Court to amend this Complaint accordingly.

7        121.   The conduct of Defendants as alleged herein was purposeful and intentional and

8   was engaged in for the purpose of depriving Plaintiff of property or legal rights or otherwise

9   causing injury, and was despicable conduct that subjected Plaintiff to cruel and unjust hardship in

10  conscious disregard of his rights, and was performed with fraud, oppression or malice so as to

11  justify an award of exemplary or punitive damages against such Defendants in an amount

12  according to proof at trial.

13                 **SEVENTH CAUSE OF ACTION**

14        **(For Intentional Interference With Prospective Economic Advantage**

15           **Against Defendants Tokenblock, Von Graff and Does 51-100)**

16       122.   Plaintiffs incorporate herein by reference each and every allegation contained in

17  Paragraphs 1 through 73, and 113 through 121 inclusive, of this Complaint as if fully set forth

18  herein.

19       123.   Prior to engaging in the aforementioned conduct, Defendants were fully aware that

20  Plaintiff had business relationships with the CryptoWatt Defendants which was an economically-

21  advantageous to Plaintiff.

22       124.   Defendants engaged in the conduct alleged above with the intent to interfere with

23  and/or destroy the economically-advantageous relationships between Plaintiff and the CryptoWatt

24  Defendant and to make that relationship less financially lucrative for Plaintiff. The conduct of

25  these Defendants was independently wrongful in that Defendants owed Plaintiff a fiduciary duty

26  as a result of their relationship and ownership of Tokenblock.

27       125.   As a proximate result of the conduct of Defendants as alleged herein, Plaintiff has

28  been damaged in an amount in excess of $20 Million, the exact amount of which will be proven at

COMPLAINT FOR DAMAGES

1  the time of trial. When Plaintiff has ascertained the full amount of his damages, he will seek leave

2  of Court to amend this Complaint accordingly.

3        126. The conduct of Defendants as alleged herein was purposeful and intentional and

4  was engaged in for the purpose of depriving Plaintiff of property or legal rights or otherwise

5  causing injury, and was despicable conduct that subjected Plaintiff to cruel and unjust hardship in

6  conscious disregard of its rights, and was performed with fraud, oppression or malice so as to

7  justify an award of exemplary or punitive damages against such Defendants in an amount

8  according to proof at trial.

9                      **PRAYER FOR RELIEF**

10       Wherefore, Plaintiff respectfully requests that the Court enter judgment in his favor and

11  against Defendants as follows:

12        a. Awarding Plaintiff damages in an amount to proven at trial;

13        b. Awarding Plaintiff pre-judgment and post-judgment interest as provided by law;

14        c. For punitive damages in an amount to be proven at trial;

15        d. Awarding Plaintiff attorneys fees, fines and penalties in accordance with the

16           Labor Code;

17        e. Awarding Plaintiff costs of suit herein incurred; and

18        f. Awarding Plaintiff such other and further relief as may be just and proper.

Dated: October 30, 2019

19                 Gretchen M. Nelson
                   Gabriel S. Barenfeld

20                 NELSON & FRAENKEL LLP

21                 Jules G. Radcliff, Jr.
                RADCLIFF & SAIKI LLP

22

23                 By: 

24                   Gretchen M. Nelson
               Attorneys for Plaintiff

25

26

27

28

1

**JURY DEMAND**

2
Plaintiff demands a trial by jury on all issues so triable.

3

4
Dated:  October 30, 2019          NELSON & FRAENKEL LLP

5
RADCLIFF & SAIKI LLP

6


7
By:_____
                 Gretchen M. Nelson

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28