J.R. Casillas
Peter F. Lacny
DATSOPOULOS, MacDONALD & LIND, P.C.
201 West Main, Suite 201
Missoula, Montana 59802
Telephone: (406) 728-0810
Email: jrcasillas@dmllaw.com; areiber@dmllaw.com
placny@dmllaw.com; hellison@dmllaw.com

*Attorneys for Atlas Power, LLC and Atlas Power Holdings, LLC*

### IN THE AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| EVAN BIRENBAUM, | AAA Case No. 01-21-0002-5535 |
| Claimant, | |
| v. | |
| CRYPTOWATT MANAGEMENT, LLC; CRYPTOWATT MINING, LLC; CRYPTOWATT INVESTMENT PARTNERS, LLC; BITPOWER MANAGEMENT, LLC; BITPOWER, LLC; BITPOWER INVESTMENT PARTNERS, LLC; ATLAS POWER, LLC; ATLAS POWER HOLDINGS, LLC; and DOES 1 through 100, | **OBJECTION AND MOTION TO DISMISS ATLAS POWER, LLC AND ATLAS POWER HOLDINGS, LLC FOR LACK OF AAA JURISDICTION** |
| Respondents. | |

COME NOW two (2) of the Respondents, Atlas Power, LLC and Atlas Power

Holdings, LLC, by and through undersigned counsel of record, and pursuant to Rule

6(c) of the AAA's Employment Arbitration Rules and Mediation Procedures,

**Exhibit E**

respectfully file their objection to the jurisdiction of the Arbitrator and corresponding motion to dismiss them from this case.

This objection and motion are timely because they are submitted prior to the filing of an Answering Statement by either of the Atlas entities. Rule 6(c) allows the Arbitrator to rule on this objection and motion as a preliminary matter, and the Atlas entities respectfully request that the Arbitrator do so.

A Brief in Support of this Objection and Motion is being submitted contemporaneously herewith.

DATED this 3rd day of June, 2021.

> DATSOPOULOS, MacDONALD & LIND, P.C.
>
>
> By:   /s/ *J.R. Casillas*
>     J.R. Casillas
>     *Attorneys for Atlas Power, LLC and*
>     *Atlas Power Holdings, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that I sent a true and correct copy of the foregoing document to the following individuals via Electronic Mail and U.S. Mail to the addresses listed below, this 3rd day of June, 2021 to:

Gretchen M. Nelson
Gabriel S. Barenfeld
NELSON & FRAENKEL LLP
601 So. Figueroa Street, Suite 2050
Los Angeles, CA 90017
Email: gnelson@nflawfirm.com
Email: gbarenfeld@nflawfirm.com

William A. Rossbach
ROSSBACH LAW P.C.
401 North Washington St.
Missoula, MT 59807-8999
Email: bill@rossbachlaw.com

Jules G. Radcliff Jr.
RADCLIFF MAYES LLP
515 S. Flower St., 18th Floor
Los Angeles, California 90071
Email: Jradcliff@radcliffmayes.com

Jerry S. Phillips
LOEB & LOEB
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Email: jphillips@loeb.com

By:    /s/ *Amanda Reiber*
        Amanda Reiber
        Paralegal, DM&L, P.C.

J.R. Casillas
Peter F. Lacny
DATSOPOULOS, MacDONALD & LIND, P.C.
201 West Main, Suite 201
Missoula, Montana 59802
Telephone: (406) 728-0810
Email: jrcasillas@dmllaw.com; areiber@dmllaw.com
placny@dmllaw.com; hellison@dmllaw.com

*Attorneys for Atlas Power, LLC and Atlas Power Holdings, LLC*

### IN THE AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| EVAN BIRENBAUM,<br><br>Claimant,<br><br>v.<br><br>CRYPTOWATT MANAGEMENT, LLC; CRYPTOWATT MINING, LLC; CRYPTOWATT INVESTMENT PARTNERS, LLC; BITPOWER MANAGEMENT, LLC; BITPOWER, LLC; BITPOWER INVESTMENT PARTNERS, LLC; ATLAS POWER, LLC; ATLAS POWER HOLDINGS, LLC; and DOES 1 through 100,<br><br>Respondents. | AAA Case No. 01-21-0002-5535<br><br><br>**BRIEF IN SUPPORT OF OBJECTION AND MOTION TO DISMISS ATLAS POWER, LLC AND ATLAS POWER HOLDINGS, LLC FOR LACK OF AAA JURISDICTION** |

Atlas Power, LLC and Atlas Power Holdings, LLC, by and through

undersigned counsel and pursuant to Rule 6(c) of the AAA's Employment

Arbitration Rules and Mediation Procedures, respectfully object to the jurisdiction

of the Arbitrator and accordingly move for their dismissal from this case.  This objection and corresponding motion are timely because they are submitted prior to the filing of an Answering Statement by either of the objecting and moving entities.

Moreover, even if they were subject to the jurisdiction of the Arbitrator, the Atlas entities also object to this matter being administered in accordance with AAA's Employment Arbitration Rules and Employment/Workplace Fee Schedule.

## RELEVANT FACTS

On October 30, 2019, Evan Birenbaum ("Birenbaum") filed a Complaint for Damages in the Superior Court for the State of California, for the County of Los Angeles, a copy of which is attached hereto as **Exhibit A**.  The Complaint includes seven (7) causes of action and names several different Defendants.  At bottom, Birenbaum's Complaint seeks damages for monies he claims are owing for services and specialized knowledge that he allegedly provided in connection with a Bitcoin mining operation in Montana.

Birenbaum filed a First Amended Complaint for Damages on July 31, 2020, a copy of which is attached hereto as **Exhibit B**.  Exhibit 1 to the First Amended Complaint is a contract between Birenbaum and BitPower, LLC (the "Contract") dated December 31, 2017.  The Contract was executed by Birenbaum and BitPower, LLC via Mr. Dan Burrell in his capacity as the CEO. Pursuant to the Contract, Birenbaum accepted BitPower, LLC's employment offer and agreed that it

contained the terms of employment with no other terms express or implied. Birenbaum alleges he was "terminated on April 3, 2018." (Am. Compl., ¶ 117).

The Contract contains the following arbitration clause:

> **15.    Arbitration:**  You and the Company shall submit to mandatory and exclusive binding arbitration of any controversy or claim arising out of, or relating to, this agreement or any breach of this letter.  Such arbitration shall [be] held in the State of Montana, Missoula County, before a single neutral arbitrator, in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association in effect at that time.

Based on the arbitration clause, Defendants Mr. Kevin Washington, Cryptowatt Management, LLC and Cryptowatt Mining, LLC filed a Motion to Compel Arbitration and to Stay the California state court proceedings pending completion of arbitration.  Birenbaum opposed the motion, but the court nevertheless granted it on September 21, 2020.  A copy of the Notice of Ruling is attached hereto as **Exhibit C**.

Birenbaum subsequently filed a Statement of Claim and Demand for Arbitration in the American Arbitration Association.  Birenbaum's Statement of Claim is dated April 1, 2021, and Exhibit 1 thereto is the Contract between Birenbaum and BitPower, LLC, which contains the arbitration clause.

The allegations in Birenbaum's Statement of Claim are strikingly similar to those set forth in the First Amended Complaint that he filed in California state court. Birenbaum's Statement of Claim includes the following Counts: Breach of Contract

(between Birenbaum and BitPower, LLC); Breach of the Implied Covenant of Good Faith and Fair Dealing (contained in the Contract between Birenbaum and BitPower, LLC); Fraud (in the inducement of the Contract between Birenbaum and BitPower, LLC); Negligent Misrepresentation (in the inducement of the Contract between Birenbaum and BitPower, LLC); Unpaid Wages (for work allegedly performed in connection with the Contract between Birenbaum and BitPower, LLC); and Punitive Damages, which is not a stand-alone claim under Montana law.[1]  Birenbaum alleges that he "continued working for Respondents through April 3, 2018" before he was terminated and stopped providing services.  (Statement of Claim, ¶¶ 63 and 71).

Notably, however, certain Defendants named in the California state court proceedings are not named Respondents in this case, including Mr. Burrell who executed the Contract with Birenbaum on behalf of BitPower, LLC.  Birenbaum also added Respondents in this case who were not named Defendants in the California state court proceedings.  Specifically, Birenbaum named as Respondents Atlas Power, LLC and Atlas Power Holdings, LLC (the "Atlas entities").  Birenbaum's apparent merits-based theory of liability against the Atlas entities is that they are successors of certain Cryptowatt entities.  (Statement of Claim, ¶¶ 23-25).  While the Atlas entities contend that they have no successor liability, that substantive issue

---

[1] *See Kelley v. Church Universal & Triumphant, Inc.*, 392 Mont. 554, 420 P.3d 509 (2018) ("Finally, wrongful or malicious conduct, attorney fees, and punitive damages cannot be maintained as stand-alone actions under Montana law.").

can only be decided by a court of competent jurisdiction; not the AAA because it lacks jurisdiction as discussed herein.  Birenbaum correctly alleges in ¶ 23 of his Statement of Claim that the Atlas entities were not formed until 2019.  Atlas Power, LLC was not formed until June 21, 2019, and Atlas Power Holdings, LLC was not formed until September 6, 2019.  The Montana Secretary of State Business Records are attached hereto as **Exhibit D**.  Mr. Washington could not have been acting on behalf of the Atlas entities when he moved to compel arbitration in the California state court proceedings because the Atlas entities were not named in that lawsuit.

The AAA does not have jurisdiction over the Atlas entities because they are not signatories to the Contract between Birenbaum and BitPower, LLC, and none of the exceptions apply that would allow Birenbaum to bind them to the arbitration clause giving rise to these AAA proceedings.  Mr. Burrell executed the Contract with Birenbaum on behalf of BitPower, LLC, yet Mr. Burrell is not named as a Respondent in this case.

## LEGAL STANDARD

Rule 6(c) of the AAA's Employment Arbitration Rules and Mediation Procedures provides:

> A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the

objection.  The arbitrator may rule on such objections as a preliminary matter or as part of the final award.[2]

Under the Federal Arbitration Act ("FAA"), a court or arbitrator considering whether to compel arbitration must consider (1) whether a valid agreement to arbitrate exists and, if so, (2) whether that agreement encompasses the dispute. *Munro v. Univ. of S. Calif.*, 896 F.3d 1088, 1091 (9th Cir. 2018).  As the party seeking to compel the Atlas entities to arbitrate, Birenbaum bears the initial burden of establishing that an agreement to arbitrate exists between the parties.  *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (noting that state contract law controls whether parties agreed to arbitrate and, citing state law, stating that the party seeking to compel arbitration bears the burden of proving existence of agreement to arbitrate).

The Arbitrator must therefore look to Montana law to determine whether the Atlas entities, as non-signatories to the Contract, are bound by the arbitration clause therein.  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009).

---

[2] As discussed in greater detail within the May 5, 2021 correspondence attached hereto as **Exhibit E**, the Atlas entities object to this matter being administered in accordance with AAA's Employment Arbitration Rules and Employment/Workplace Fee Schedule.  Counsel for Birenbaum submitted a responsive letter on May 7, 2021, which is attached hereto as **Exhibit F**. Regardless, this matter is so designated for the time being.  The Atlas entities' citation to Rule 6 or other Arbitration Rules herein is made with full reservation of rights and shall not be deemed a waiver of the Atlas entities' right to further object to the designation or to present defenses and arguments on the merits if the Arbitrator denies this motion.

BRIEF IN SUPPORT OF OBJECTION AND
MOTION TO DISMISS ATLAS POWER, LLC
AND ATLAS POWER HOLDINGS, LLC                6

# ARGUMENT

## I.     The Arbitrator has the power to rule on his or her own jurisdiction.

Rule 6(a) of the AAA's Employment Arbitration Rules and Mediation Procedures provides:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

In *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015), the Ninth Circuit unanimously held that the Arbitrator, not the court, is to determine a challenge to an arbitration clause when the clause incorporates the AAA Arbitration Rules that authorize the Arbitrator to decide his or her own jurisdiction.

In *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013), the Ninth Circuit observed that, "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Id.*, at 1074.   The Ninth Circuit found this consensus persuasive in holding that incorporation of the UNCITRAL rules – which contain a jurisdictional provision "almost identical" to the one in the AAA rules – constituted "clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability." *Id.*, at 1074-75.

Here, the delegation provision in the arbitration clause clearly and unmistakably delegated to an Arbitrator the question of whether the arbitration clause is enforceable by expressly incorporating the AAA Arbitration Rules, one of which provides that the "arbitrator shall have the power to rule on his or her own jurisdiction…"  *Brennan*, at 1130-31.  The arbitration clause in the Contract provides, in relevant part, that arbitration shall be held "in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association in effect at that time."  The Arbitrator should accordingly rule on this motion as a preliminary matter.

## II.     Birenbaum's Statement of Claim against the Atlas entities must be dismissed because the AAA lacks jurisdiction.

### A.     The Atlas entities are not signatories to the Contract between Birenbaum and BitPower, LLC.

The Contract upon which Birenbaum bases some of his claims and pursuant to which arbitration was compelled is solely between Birenbaum and BitPower, LLC.  Mr. Burrell executed the Contract on behalf of BitPower, LLC, but he is not a named Respondent in this case. The Atlas entities are not signatories to the Contract.  Birenbaum's claims against the Atlas entities must be dismissed because they did not agree to arbitrate this or any other dispute with Birenbaum.

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Gunville v. Conlin*,

2007 Mont. Dist. LEXIS 779, at *5 (Mont. Dist. Ct. 13th Jud. Dist., Yellowstone County November 6, 2007) (citing *AT&T Techs., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 648 (1986)).  Although the FAA favors arbitration, "arbitration under the FAA is a matter of consent, not coercion."  *Gunville*, at *5 (citing *Volt Information Sci., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).  This means that, "at a bare minimum, …the protagonists have agreed to arbitrate *some* claims."  *Gunville*, at **5-6 (emphasis in original) (citing *McCarthy v. Azure*, 22 F.3d 351, 354-55 (1st Cir. 1994)).  The federal policy favoring arbitration "does not extend to situations in which the identity of the parties who have agreed to arbitrate is unclear."  *Id.* (citing *Painewebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3rd Cir. 1990)).  Therefore, a court or an arbitrator must first determine whether the parties agreed to arbitrate the dispute.  *Gunville*, at *6 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Ratchye v. Lucas*, ¶ 14, 288 Mont. 345, 957 P.2d 1128 (1998)).

When rendering a determination whether the parties agreed to arbitration, a court or arbitrator should generally apply "ordinary state-law principles that govern the formation of contracts."  *Gunville*, at *6 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).[3]  In Montana, the general rule is that "a contract

---

[3] Section 13 of the Contract also contains the following choice-of-law clause: "The terms of this offer letter and the resolution of any disputes will be governed by the laws of the State of Montana, without giving effect to conflict of laws principles."

binds no one but the contracting parties." *Gunville*, at *6 (citing *Fordyce v. Musick*, 245 Mont. 315, 319, 800 P.2d 1045, 1047 (1990)).

Here, the Contract is solely between Birenbaum and BitPower, LLC, who executed it via Mr. Burrell, a non-party to this case.   The Contract contains an arbitration clause, but the Atlas entities are not identified as contracting parties. They could not have been because they did not even exist when the Contract was executed. There is absolutely no indication that the Atlas entities agreed to arbitrate. Arbitration is a matter of consent, not coercion.   Birenbaum's claims against the Atlas entities must be dismissed for lack of AAA jurisdiction.

### B.       As non-signatories, the Atlas entities are not bound by the arbitration clause in the Contract.

Based upon the Atlas entities being non-signatories to the Contract, the issue before the Arbitrator is whether a signatory can compel arbitration against non-signatories.   To bind the Atlas entities to the arbitration clause, Birenbaum somehow must go beyond the four corners of the Contract and show that the Atlas entities are obligated to shoulder its burdens.   *Gunville v. Conlin*, at *8 (citing *InterGen N.V. v. Grina*, 344 F.3d 134, 143 (1st Cir. 2003)).   A court should apply ordinary, state-law contract and agency principles to determine whether a non-signatory can be bound by an arbitration clause.   *Gunville*, at *8 (citing *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986)).

Under controlling Montana law, a non-signatory can only be bound by an arbitration clause based upon theories of: "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; (5) estoppel; or (6) being a third-party beneficiary." *Granville*, at *8 (citing *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006)).  Even then, however, "[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009).

The Atlas entities anticipate that Birenbaum will argue their alleged successor liability in his response hereto.  However, successor liability is ***not*** one of the theories that can potentially bind a non-signatory to an arbitration clause, and that substantive issue is for a court of competent jurisdiction to decide anyhow, not the AAA which lacks jurisdiction.  (emphasis supplied).  The subject matter of this objection and motion is purely jurisdictional in nature.

As discussed in turn below, none of the recognized theories apply to allow Birenbaum to bind the Atlas entities to the arbitration clause in the Contract.

**i.    Incorporation by Reference**

Under a theory of incorporation by reference, "a non-signatory may compel arbitration against a party to an arbitration agreement when that party has entered into a separate contractual relation with the non-signatory which incorporates the existing arbitration clause." *Hopkins v. Genesis FS Card Servs.*, 2020 U.S. Dist.

LEXIS 14910, at *30 (Dist. Or. 2020) (quoting *Thomson-CSF, S.A. v. Am.
Arbitration Ass'n*, 64 F.3d 773, 777 (2nd Cir. 1995)).

This theory is inapplicable here. While the Atlas entities are non-signatories,
they are ***not*** seeking to compel arbitration against Birenbaum or BitPower, LLC.
(emphasis supplied).   To the contrary, the Atlas entities are seeking to avoid
arbitration.  This theory does not apply to this inverse situation.  Moreover, there is
no allegation in Birenbaum's Statement of Claim of a separate contractual
relationship between the Atlas entities and either Birenbaum or BitPower, LLC
incorporating the arbitration clause in the Contract.  The Atlas entities must be
dismissed from this case.

## ii.    Assumption

A non-signatory can be bound under the assumption theory only if "its
subsequent conduct indicates that it is assuming the obligation to arbitrate."
*Thomson-CSF*, 64 F.3d at 777 (2nd Cir. 1995).   The fact that a non-signatory
expressly objects to arbitration on jurisdictional grounds is evidence that it has ***not***
assumed the obligation to arbitrate.  *Gilman v. Walters*, 61 F. Supp. 3d 794, 804
(S.D. Ind. 2014) (emphasis supplied) (citing *Hospira, Inc. v. Therabel Pharma N.V.*,
2013 U.S. Dist. LEXIS 102196, at **12-13 (N.D. Ill. 2013)).  Filing a jurisdictional
objection is "legally and factually insufficient to satisfy the doctrine of assumption."

*Gilman*, at 803 (citing *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 85 (3rd Cir. 2010)).

This theory is inapplicable here.  The Atlas entities expressly disavow any obligations arising out of the Contract between Birenbaum and BitPower, LLC.  The Atlas entities filed this motion to object to arbitration on jurisdictional grounds.  The Atlas entities' jurisdictional objection does not invoke the doctrine of assumption. It cannot be said that the Atlas entities assumed the obligation to arbitrate because they refuse to submit any substantive or merits-based issues to the Arbitrator, such as successor liability.  The Atlas entities did not even exist when the events giving rise to Birenbaum's Statement of Claim allegedly occurred.  By this motion, the Atlas entities seek to distance themselves from the arbitration clause in the Contract. The Atlas entities must be dismissed from this case.

### iii.    Agency

In limited circumstances, when a non-signatory and one of the parties to an arbitration agreement have an agency relationship, the arbitration agreement may be enforced against the non-signatory.  *Tamsco Properties, LLC v. Langemeier*, 597 F. App'x 428, 429 (9th Cir. 2015).  More specifically, an arbitration agreement may be enforced by or against a non-signatory "when a non-signatory and one of the parties to the agreement have a ***preexisting agency relationship*** that makes it equitable to

impose the duty to arbitrate on either of them." *Bridge v. Credit One Fin.*, 294 F. Supp. 3d 1019, 1026 (Dist. Nev. 2018) (emphasis supplied).

This theory is inapplicable here. Birenbaum cannot show that BitPower, LLC was acting as an agent for the Atlas entities when BitPower, LLC entered into the Contract or at any time thereafter until Birenbaum's alleged termination on April 3, 2018. BitPower, LLC was not identified as an agent for the Atlas entities in the Contract. There could not have been a preexisting agency relationship between BitPower, LLC and the Atlas entities when the Contract was executed on December 31, 2017 or at any time before Birenbaum's alleged termination because the Atlas entities did not even exist at the time. Atlas Power, LLC was not formed until June 21, 2019, and Atlas Power Holdings, LLC was not formed until September 6, 2019. Mr. Kevin Washington is not named as a Respondent in this arbitration, and he could not have been acting on behalf of non-existent entities at any time relevant to Birenbaum's claims. In the absence of an agency relationship, it is not equitable to impose the duty to arbitrate on the Atlas entities. The Atlas entities must be dismissed from this case.

## iv.   Veil-Piercing/Alter-Ego

When considering whether a non-signatory may be compelled to arbitrate on the basis of an alter ego theory, courts and arbitrators look to whether the non-signatory "so dominated a signatory that it is appropriate to pierce the signatory's

corporate veil and hold the non-signatory liable on the contract containing the arbitration provision." *Petersen v. EMC Telecom Corp.*, 2010 U.S. Dist. LEXIS 59854, at *12 (Dist. Ariz. 2010) (citing *World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1248 (11th Cir. 2008)).   Veil-piercing is a fact-intensive inquiry that is appropriate "where a corporation uses its alter ego to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling [entity's] business instead of its own." *Petersen*, at *12 (citing *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 839 n. 6 (9th Cir. 2004)) (quoting *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997)).

This theory is inapplicable here.   The alleged breach of Contract and tortious conduct giving rise to Birenbaum's claims all occurred on or before April 3, 2018 when he was allegedly terminated and discontinued providing services in connection with the development of the Bitcoin plant.   The Atlas entities did not even exist until their subsequent formation in 2019.   The Atlas entities therefore could not have "so dominated" BitPower, LLC in such a manner to justify subjecting the Atlas entities to the arbitration clause in the Contract.   BitPower, LLC could not have used the Atlas entities to perpetuate a fraud, or vice-versa, because the Atlas entities were non-existent until more than a full year after Birenbaum's claims accrued.   BitPower, LLC could not have been carrying on the Atlas entities' business, or vice-versa,

instead of their own at any point in time relevant to Birenbaum's claims.  The Atlas

entities must be dismissed from this case.

**v.     Estoppel**

Under Montana law, a party asserting equitable estoppel must establish the

following six elements by clear and convincing evidence: 1) the existence of

conduct, acts, language or silence constituting a representation or concealment of a

material fact; 2) the fact must be known to the party to be estopped at the time of the

conduct or the circumstances be such that knowledge of the fact is necessarily

imputed to that party; 3) the truth concerning the fact must be unknown to the party

claiming estoppel at the time it was acted upon; 4) the conduct must be done with

the intent, or at least the expectation, that it will be acted upon by the other party or

under circumstances both natural and probable that it will be acted upon; 5) the

conduct must be relied upon by the other party and, thus relying, the party must be

led to act upon it; and 6) the other party must, in fact, act upon it in such a manner

as to change the party's position for the worse.  *Billings Post No. 1634 v. Dept. of

Rev.*, 284 Mont. 84, 90, 943 P.2d 517, 520 (1997).  If the party claiming estoppel

fails to establish even one of these elements, the doctrine of equitable estoppel

cannot be invoked.  *Elk Park Ranch, Inc. v. Park County*, 282 Mont. 154, 166, 935

P.2d 1131, 1138 (1997).

In the arbitration context, equitable estoppel "precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations." *Ouadani v. TF Final Mile LLC*, 876 F.3d 31, 38 (1st Cir. 2017) (citing *InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003)). Courts generally "have been willing to estop a ***signatory*** from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Id.* (emphasis in original) (quoting *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, (2nd Cir. 1995)).

But courts have been reluctant to estop non-signatories like the Atlas entities from avoiding arbitration. *InterGen*, at 145-46. In the latter scenario, "estoppel has been limited to 'cases [that] involve non-signatories who, ***during the life of the contract***, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract.'" *Id.*, at 146 (emphasis supplied) (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3rd Cir. 2001)). "The benefits must be direct – which is to say, flowing directly from the agreement." *MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2nd Cir. 2001).

This theory is inapplicable here. It was legally, equitably, and indeed practically impossible for the Atlas entities to embrace the Contract during its life or to enjoy any rights or benefits thereunder because the Atlas entities did not even exist until *after* Birenbaum was allegedly terminated and discontinued providing services in connection with the development of the Bitcoin plant. (emphasis supplied). Birenbaum alleges that he "continued working for Respondents through April 3, 2018." (Statement of Claim, ¶¶ 63 and 71). The life of the Contract ended at that time. Atlas Power, LLC was not formed until June 21, 2019 and Atlas Power Holdings, LLC was not formed until September 6, 2019. Whether the Atlas entities are liable to Birenbaum on the merits via a successor theory or otherwise can only be decided by a court of competent jurisdiction. Birenbaum's successor liability theory is not relevant to the purely jurisdictional question now before the Arbitrator.

Birenbaum cannot establish *any* of the elements of equitable estoppel because non-existent entities could not have made any representations or concealed any facts upon which Birenbaum relied in either entering the Contract or allegedly continuing to provide services through April 3, 2018. (emphasis supplied).  Mr. Washington could not have been acting on behalf of non-existent entities before Birenbaum's claims accrued.  Non-existent entities could not have knowingly exploited or received any benefits flowing directly from the Contract.  According to Birenbaum's pleadings, the Contract was terminated more than a full year before the Atlas entities

were ever formed.  The Atlas entities are not asserting any claim under the Contract. The doctrine of equitable estoppel cannot be invoked.  The Atlas entities must be dismissed from this case.

**vi.    Third-Party Beneficiary**

The Montana Supreme Court has held "[t]hat there is a plain distinction between a promise, the performance of which may benefit a third party, and a promise made expressly for the benefit of a third party." *Turner v. Wells Fargo Bank, N.A.*, ¶ 18, 366 Mont. 285, 291 P.3d 1082 (2012).  Those that are incidental beneficiaries lack standing to enforce the contract from which they benefit.  *Ronning v. Yellowstone County*, ¶ 14, 360 Mont. 108, 253 P.3d 818 (2011).

Not everyone who may benefit from performance or suffer from non-performance of a contract between two other parties is permitted to enforce or be sued on the contract.  *Diaz v. Blue Cross & Blue Shield of Mont.*, ¶ 18, 363 Mont. 151, 267 P.3d 756 (2011) (citing Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* vol. 13, § 37:7, 29 (4th ed., West 2000)).  A stranger to a contract lacks standing to sue or be sued for breach of that contract unless he is an intended third-party beneficiary of the contract.  *Dick Anderson Constr., Inc. v. Monroe Constr. Co., LLC*, ¶ 46, 353 Mont. 534, 221 P.3d 675 (2009) (citations and quotations omitted).  A party "cannot assume that he is an intended third-party beneficiary; rather, he must show ***from the face of the contract*** that it was intended

to benefit him." *Klingman v. Mont. Pub. Serv. Commn.*, ¶ 40, 364 Mont. 128, 272 P.3d 71 (2012) (emphasis supplied) (citing *Diaz*, at ¶¶ 19, 21).

The third-party beneficiary doctrine, while similar in some ways to estoppel, is a distinct ground for compelling a non-signatory to arbitrate. *Ouadani v. TF Final Mile LLC*, 876 F.3d 31, 39 (1st Cir. 2017). A court or an arbitrator analyzing whether the third-party beneficiary doctrine applies looks to the parties' intentions at the time the contract was executed. *Id.* (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 362 (5th Cir. 2003)). The "critical fact" that determines whether a non-signatory is a third-party beneficiary is whether the underlying agreement "manifest[s] an intent to confer ***specific legal rights*** upon [the non-signatory]." *Ouadani*, at 39 (emphasis in original) (citing *InterGen N.V. v. Grina*, 344 F.3d 134, 147 (1st Cir. 2003)).

In *InterGen*, the court noted that the third-party beneficiary theory should be approached "with care" because the law "requires 'special clarity' to support a finding 'that the contracting parties intended to confer a benefit' on a third party." *Id.*, at 146 (citing *McCarthy v. Azure*, 22 F.3d 351, 362 (1st Cir. 1994)). As such, a mere benefit to the non-signatory resulting from a signatory's exercise of its contractual rights is not enough. *Id.*, at 146-47.

This theory is inapplicable here. The face of the Contract does not manifest any intent to benefit the Atlas entities. The Atlas entities' names are not in any part

of the Contract and they are not identified as third-party beneficiaries therein.  Mr. Burrell executed the Contract on behalf of BitPower, LLC, and he is not a Respondent in this case.  There is also no indication on the face of the Contract that the Atlas entities are obligated to shoulder its burdens.  There is no language in the Contract that can be read to provide the Atlas entities with any legal rights, let alone "specific legal rights" flowing directly from the Contract.

The analysis focuses on what the parties to the Contract intended at contract time – i.e., upon its execution. The Atlas entities could not have been either incidental beneficiaries or intended third-party beneficiaries of the Contract because they did not exist when the Contract was executed by Birenbaum and BitPower, LLC on December 31, 2017, or when Birenbaum was allegedly providing services in furtherance thereof.  It was impossible for the contracting parties to intend to benefit entities that did not exist when the Contract was executed.  Birenbaum's inability to show that the parties to the Contract intended to provide "specific legal rights" to the Atlas entities is fatal to any third-party beneficiary theory that Birenbaum may assert.  The Atlas entities are not intended third-party beneficiaries of the Contract. The Atlas entities must be dismissed from this case.

## CONCLUSION

Arbitration is a matter of contract. The Atlas entities cannot be required to submit to arbitrate any dispute which they have not agreed so to submit.  The Atlas

entities are non-signatories to the Contract between Birenbaum and BitPower, LLC. None of the theories that could potentially allow Birenbaum to bind the Atlas entities to the arbitration clause apply.  The strong public policy in favor of arbitration does not extend to the Atlas entities because they are not parties to the Contract. Birenbaum cannot meet his heavy burden of establishing that an agreement to arbitrate exists between him and the Atlas entities.

The Arbitrator should exercise the power provided for in the Arbitration Rules and by the law to dismiss the Atlas entities from this case for lack of jurisdiction. The Arbitrator lacks jurisdiction to entertain any substantive or merits-based arguments that Birenbaum may assert in response to this motion, such as successor liability.  Such issues can only be decided by a court of competent jurisdiction, not by the AAA.  The Atlas entities respectfully submit that this motion should be granted.

DATED this 3rd day of June, 2021.

DATSOPOULOS, MacDONALD & LIND, P.C.


By:   /s/ *J.R. Casillas*
          J.R. Casillas
          *Attorneys for Atlas Power, LLC and*
          *Atlas Power Holdings, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that I sent a true and correct copy of the foregoing document to the following individuals via Electronic Mail and U.S. Mail to the addresses listed below, this 3rd day of June, 2021 to:

| | |
|---|---|
| Gretchen M. Nelson<br>Gabriel S. Barenfeld<br>NELSON & FRAENKEL LLP<br>601 So. Figueroa Street, Suite 2050<br>Los Angeles, CA 90017<br>Email: gnelson@nflawfirm.com<br>Email: gbarenfeld@nflawfirm.com | William A. Rossbach<br>ROSSBACH LAW P.C.<br>401 North Washington St.<br>Missoula, MT 59807-8999<br>Email: bill@rossbachlaw.com |
| Jules G. Radcliff Jr.<br>RADCLIFF MAYES LLP<br>515 S. Flower St., 18th Floor<br>Los Angeles, California 90071<br>Email: Jradcliff@radcliffmayes.com | Jerry S. Phillips<br>LOEB & LOEB<br>10100 Santa Monica Blvd., Suite 2200<br>Los Angeles, CA 90067<br>Email: jphillips@loeb.com |

By:   /s/ *Amanda Reiber*
      Amanda Reiber
      Paralegal, DM&L, P.C.